STATE of Missouri, Respondent,

v.

Andre COLE, Appellant.

No. SC 83485.

Supreme Court of Missouri,
En Banc.

Feb. 26, 2002.

Rehearing Denied April 23, 2002.

---

Deborah B. Wafer, Asst. Public Defender, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for Respondent.

WHITE, Judge.

## I.

Appellant, Andre Cole, was convicted of first-degree murder, first-degree assault, first-degree burglary, and two counts of armed criminal action. He was sentenced to death for the murder, three terms of life imprisonment for the assault and two counts of armed criminal action, and thirty years for the burglary. Because the death penalty was imposed, this Court has exclusive appellate jurisdiction pursuant to Mo. Const. art. V, sec. 3. The judgment of the trial court is affirmed.

## II.

The facts, which this Court reviews in the light most favorable to the verdict,[1] are as follows:

Appellant and his wife, Terri Cole (Terri), divorced in 1995 after eleven years of marriage. Appellant was ordered to pay child support for the care of the couple's two children but his periodic failure to make payments resulted in an arrearage totaling nearly $3000.00. Upon learning that a payroll withholding order was issued to his employer, Appellant commented to his coworkers, "Before I give her another dime I'll kill the bitch."

The first payroll deduction for child support appeared on Appellant's August 21, 1998 paycheck, and several hours later Appellant forced his entry into Terri's house by throwing an automobile jack through the glass door leading to the dining room. Anthony Curtis (Curtis), who was visiting Terri, confronted Appellant and asked him to leave. Appellant stabbed Curtis multiple times resulting in his death. Appellant then assaulted Terri, stabbing her repeatedly in the stomach, breasts, back, and arms, and her hands when she attempted to defend herself. Terri survived.

After the attack, Appellant fled the State, but he returned to St. Louis and surrendered to the police thirty-three days

---

1. *State v. Christeson,* 50 S.W.3d 251, 257 (Mo. banc 2001).

later. DNA analysis confirmed the presence of both victims' blood on the knife and the presence of Appellant's blood on the deck of Terri's home, the backyard fence, and in the street where Appellant's car had been parked.

### III.

■ In his first point, Appellant contends that the evidence at trial was insufficient to establish, beyond a reasonable doubt, that he deliberated on killing Curtis. According to Appellant, he was unaware of Curtis's presence in the home when he forced his way inside, he did not know Curtis, and he was so enraged during the assaults that he could not have coolly reflected on the murder. Without evidence of deliberation, an intentional killing is second-degree murder,[2] and the facts that a lethal weapon was used or that multiple wounds were inflicted are not conclusive on the question of deliberation.[3]

■ When considering the sufficiency of the evidence on appeal, this Court must determine if sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt.[4] The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict.[5] The element of deliberation may be proven from the circumstances surrounding the crime.[6] Deliberation requires only a brief moment

of "cool reflection" and may be inferred from the fact that a defendant had the opportunity to terminate an attack after it began.[7] While the evidence of multiple wounds is not conclusive, numerous wounds or repeated blows may support an inference of deliberation.[8]

■ Appellant stabbed Curtis a total of twenty-one times. Thirteen of the injuries were defense wounds to his hands, eight of the wounds were located on either his head or torso, and five of these eight wounds required considerable force, having penetrated four or more inches into the body striking bone. The evidence indicated that midway during the attack Curtis fell face down on the floor and was no longer offering any resistance. Appellant resumed the attack on his incapacitated victim and inflicted multiple stab wounds to Curtis' back, including the fatal wound that severed Curtis's aorta. Appellant's choice to continue his assault on Curtis when he no longer resisted provides sufficient evidence from which a reasonable jury could find the element of deliberation beyond a reasonable doubt.

### IV.

Appellant's second point provides the Court with a list of complaints regarding the prosecutor's guilt-phase closing argument and an item of guilt-phase evidence, all of which are alleged to have been improper and prejudicial. The common

---

2. *State v. Seals*, 515 S.W.2d 481, 486 (Mo. 1974); *State v. Snow*, 293 Mo. 143, 238 S.W. 1069 (1922).

3. *State v. Samuels*, 965 S.W.2d 913, 923 (Mo. App.1998); *State v. Maynard*, 954 S.W.2d 624, 629–31 (Mo.App.1997); *State v. Roberts*, 785 S.W.2d 614, 615–16 (Mo.App.1990).

4. *State v. Black*, 50 S.W.3d 778 (Mo. banc 2001).

5. *State v. Goodwin*, 43 S.W.3d 805, 818 (Mo. banc 2001).

6. *State v. Ferguson*, 20 S.W.3d 485, 497 (Mo. banc 2000).

7. Section 565.002(3); *State v. Ervin*, 979 S.W.2d 149, 159(Mo. banc 1998); *State v. Johnston*, 957 S.W.2d 734, 747–48 (Mo. banc 1997).

8. *State v. Ervin*, 979 S.W.2d at 159.

thread to these claims is that none were preserved for direct appeal by a timely objection at trial. With regard to five of Appellant's six complaints, the record on appeal and the briefs of the parties have been reviewed. Finding no error of law an extended opinion on these issues would have no precedential value.[9]

■ One of Appellant's claims, however, merits discussion. Appellant argues that during the guilt-phase closing argument, the prosecutor committed prejudicial misconduct by making an erroneous propensity argument. While the prosecutor was challenging the credibility of the Appellant and his version of the events taking place on the night of the murder, he made several references to the Appellant being a convicted felon. Refuting Appellant's claims that it was Terri who was the attacker and not the Appellant, the prosecutor also stated, "She's a mom who worked for a health care company doing clerical work and he's a convicted killer."

Appellant had testified at trial and, consequently, his prior offenses, including two felony convictions for unlawful use of a weapon and a violation of an adult abuse order. were properly admitted into evidence. Appellant contends, however, that the prosecutor's earlier reference to the actual prior offenses, and the later erroneous statement about being a convicted killer, were used improperly to show propensity, i.e., prior guilt being used to establish guilt of the current offense charged.

■ Allegedly improper comments made by the prosecutor that are not preserved for review by a timely objection will be reviewed only for manifest injustice under the plain error rule, rule 30.20.[10] "To prevail on plain error review, [Appellant] must show that the trial court's error so substantially violated his rights that manifest injustice or a miscarriage of justice results if the error is not corrected."[11] While it is improper to use prior convictions as substantive evidence of guilt or a defendant's propensity to commit crimes,[12] it is permissible to use them to attack the defendant's truthfulness and credibility in his testimony.[13]

■ The prosecutor's statements referencing Appellant's prior convictions were properly admitted to attack the Appellant's credibility. The misstatement by the prosecutor referring to the Appellant

9. Rule 30.25. The matters complained of include the following statements made by the prosecutor in guilt-phase closing argument: (1) that the victim, Terri Cole, was afraid to return home after being released from the hospital "because she didn't know if [Appellant] was coming back;" (2) that he could not "think of a case that could be more important to the people of St. Louis County and to the family of Anthony Curtis and to the family of Terri Cole and Terri Cole herself;" (3) that Appellant's anger and actions toward Terri Cole over having to pay child support supported a determination of deliberation—"He didn't want to pay child support," "He didn't think he would have to abide by that wage assignment," "If that's not enough for you, sneaking around, him making threats and not paying what he's suppose to pay when he's got the money"; (4) that Appellant had "gall"

to accuse Terri Cole of being the attacker, and "don't tell Terri Cole, a dying woman (she was suffering from Lou Gehrig's disease), by your verdict that she is a liar;" and (5) that "people sitting in that chair (indicating Appellant's chair), ladies and gentlemen, are usually there for a reason."

10. *State v. Christeson,* 50 S.W.3d at 265.

11. *State v. Clayton,* 995 S.W.2d 468, 478 (Mo. banc 1999).

12. *State v. Driscoll,* 55 S.W.3d 350, 355 (Mo. banc 2001); *State v. Smith,* 32 S.W.3d 532, 550 (Mo. banc 2000); *State v. Jacobs,* 939 S.W.2d 7, 11 (Mo.App.1997).

13. *Jacobs,* 939 S.W.2d at 11. Section 491.050.

as a "convicted killer" was a single inadvertent remark not prejudicing Appellant because the jury had already been presented with the precise nature of his actual prior convictions, none of which involved a homicide. Statements made in closing argument will rarely amount to plain error, and any assertion that the trial court erred for failure to intervene sua sponte overlooks the fact that the absence of an objection by trial counsel may have been strategic in nature.[14]

## V.

Appellant next contends he was prejudiced by being subjected to an unauthorized sentence of death. Acknowledging that this point was not preserved for appellate review, Appellant, citing *Apprendi v. New Jersey,* seeks plain error review for alleged violations of his Sixth, Eighth and Fourteen Amendment rights for having his punishment unconstitutionally enhanced. Appellant claims the State's indictments and substitute information failed to charge him, as is required, with any fact that increases the maximum penalty for a crime.[15]

■ Appellant's argument is based upon the premise that while section 565.020 establishes a single offense of first-degree murder, the combined effect of sections 565.020 and 565.030.4 is to create two types of first-degree murder. According to Appellant, the before-mentioned statutes delineate two separate crimes, "unenhanced" first-degree murder, carrying a maximum sentence of life without probation or parole, and "aggravated" first-degree murder, requiring an additional element of at least one statutory aggravator pursuant to section 565.032 and which car-

ries the maximum sentence of death. Appellant claims the failure to include any statutory aggravators in either the indictment or the information necessarily results in Appellant only being charged with "unenhanced" first-degree murder and to assess a sentence of death increases the statutory maximum penalty which was beyond the jurisdiction of the trial judge.

■ Appellant's claim is meritless. Section 565.020 defines a single offense of first-degree murder with the express range of punishment including life imprisonment or death. Section 565.030 delineating trial procedure in cases of first-degree murder does not create, or differentiate, two separate categories of first-degree murder offenses. The maximum penalty for first-degree murder in Missouri is death, and the required presence of aggravating facts or circumstances to result in this sentence in no way increases this maximum penalty. *Apprendi* is inapposite.

## VI.

■ Appellant also asserts the trial court erred in overruling his objection to jury Instruction 18, the aggravating circumstance involving whether or not the murder was outrageously and wantonly vile, horrible, and inhuman involving depravity of mind.[16] Appellant claims that the limiting instruction defining "depravity of mind" as being "repeated" and "excessive" acts of physical abuse making the killing unreasonably brutal is constitutionally vague. According to the Appellant, without defining the words "repeated" and "excessive" this definition fails to provide adequate guidance to make a distinction as

---

14. *State v. Clayton,* 995 S.W.2d at 478.

15. *Apprendi v. New Jersey,* 530 U.S. 466, 476, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

16. Section 565.032.2(7). See also MAI–CR3d 313.40.

to if the death penalty was appropriately imposed.[17]

This Court has repeatedly held that the "depravity of mind language and limiting instruction provide sufficient guidance to the sentencing jurors such that the instruction is not unconstitutionally vague." [18] An extended discussion on the point would have no precedential value.

## VII.

In his fifth point, Appellant claims the trial court erred in overruling his motion to quash the jury panel based upon Appellant's *Batson* challenge of the peremptory strike of African–American venireperson, Mr. Chambers (Chambers).[19] The prosecutor gave three reasons for his exclusion: his prior divorce, his indecisiveness on whether he could impose the death penalty, and the fact that his cousin was currently serving life in prison for a murder in Michigan. Defense counsel challenged the strike on the basis that two other jurors who were not struck were similarly situated in that one was paying child support and the other was never married.

Appellant now argues that in addition to these two jurors, another venireperson, who remained on the panel, was a similarly situated white venireperson because her nephew was serving time in Florida for a homicide. Appellant also claims that Chambers indicated he could sign a death verdict, assuming Appellant was unanimously found guilty "Because that says I've also agreed that that's the right thing to do."

■■■■■ "The Equal Protection Clause of the Fourteenth Amendment governs the exercise of peremptory challenges by a prosecutor in a criminal trial." [20] There is a three-step process for making a successful *Batson* challenge in Missouri.[21] After the defendant objects to the state's peremptory strike and identifies the protected class to which the prospective juror belongs, the state must provide a reasonably specific and clear, race-neutral explanation for the strike.[22] If the state articulates a facially neutral explanation, the burden shifts to the defendant to demonstrate the state's explanation was pretextual and that the strike was actually motivated by race.[23] A trial judge's determination that a peremptory strike was made on racially neutral grounds is entitled to great deference on appeal and will only be overturned if shown to be clearly erroneous leaving the reviewing court with the definite and firm impression that a mistake was made.[24]

17. See *Furman v. Georgia,* 408 U.S. 238, 313, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); *Maynard v. Cartwright,* 486 U.S. 356, 363, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988).

18. *State v. Johns,* 34 S.W.3d 93, 115 (Mo. banc 2000); *State v. Johnson,* 22 S.W.3d 183, 191 (Mo. banc 2000); *State v. Knese,* 985 S.W.2d 759, 778 (Mo. banc 1999); *Ervin,* 979 S.W.2d at 166.

19. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

20. *State v. Brown,* 958 S.W.2d 553 (Mo. banc 1997), citing to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

21. *State v. Deck,* 994 S.W.2d 527, 537 (Mo. banc 1999); *State v. Parker,* 836 S.W.2d 930, 939 (Mo. banc 1992).

22. *Id.*

23. *Id.*; *State v. Brown,* 998 S.W.2d 531, 543 (Mo. banc 1999); *Purkett v. Elem,* 514 U.S. 765, 767–68, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)

24. *Batson,* 476 U.S. at 98 (n. 21, 106 S.Ct. 1712); *Parker,* 836 S.W.2d at 934; *State v. Williams,* 24 S.W.3d 101, 120 (Mo.App.2000); *State v. Brown,* 998 S.W.2d at 541; *State v. Barnett,* 980 S.W.2d 297, 302 (Mo. banc 1998); *State v. Hall,* 955 S.W.2d 198, 205 (Mo. banc 1997).

Contrary to Appellant's assertions, the two venire persons cited as being similarly situated with regard to marital status were not divorced, but had not married. The prosecutor was justified in being concerned over the animosity that may develop between divorced spouses and the sympathy Chambers may have shown Appellant.

With regard to Chambers's ability to impose the death sentence, in addition to the statement previously cited, he made the several other conflicting statements. When initially asked if he could consider a death sentence he stated, "I honestly don't know," and "I don't know whether I could or not." Only under repeated questioning, when presented with the assumption of the defendant being found unanimously guilty, did Chambers indicate that he could sign a verdict form awarding the death penalty.

A white venireperson having a nephew in prison for manslaughter and Chambers having a cousin serving life for murder are not comparative equivalents. While both venirepersons indicated they could try this case without being influenced by these experiences, only Chambers indicated that he had formed an opinion about the prior case. Chambers indicated that from speaking with family members that his cousin "got what he deserved."

Marital status, hesitancy regarding imposing the death penalty, and having a family member in prison have all been determined to be race-neutral reasons for making peremptory strikes.[25] Considering the totality of the circumstances as required,[26] including Chambers's status as a divorcee, his inconsistent statements about his ability to impose the death penalty, and his opinion concerning the murder case involving his cousin, Appellant did not demonstrate that the prosecutor's explanation was pretexual in nature. The trial court did not erroneously validate the peremptory challenge to exclude Chambers from the jury panel.

## VIII.

Appellant also contests the trial court's decision to overrule his motion to strike venireperson Mr. Clark on the grounds that he was a police officer and consequently "too closely connected to the prosecution to serve fairly and impartially." This alleged abuse of discretion, according to Appellant, would be violative of Appellant's constitutional rights to due process, equal protection, fair trial by jury, and reliable sentencing free from cruel and unusual punishment. Appellant claims he was forced to exercise a peremptory challenge to remove this potentially biased venireperson from the jury panel and an accused "must be afforded a full panel of qualified jurors before he is required to expend his peremptory challenges."[27] "[D]enial by a trial court of a legitimate request by an accused to excuse for cause a partial or prejudiced venireperson constitutes reversible error."[28]

Section 494.480.4 provides in pertinent part:

The qualifications of a juror on the panel from which peremptory challenges by the defense are made shall not constitute a ground for the granting of a motion for new trial or the reversal of a conviction or sentence unless such juror

---

25. *Barnett,* 980 S.W.2d at 302; *State v. Taylor,* 18 S.W.3d 366, 372 (Mo. banc 2000).

26. *Parker,* 836 S.W.2d at 939.

27. *State v. Johnson,* 722 S.W.2d 62, 65 (Mo. banc 1986) (quoting, *State v. Hopkins,* 687 S.W.2d 188, 190 (Mo. banc 1985)).

28. *Id.*

served upon the jury at the defendant's trial and participated in the verdict rendered against the defendant.

Venireman Clark did not serve on Appellant's jury, having been removed with a peremptory challenge; consequently, Appellant's claim of error is statutorily precluded.

 With regard to Appellant's charge of abuse of discretion, the trial judge was not categorically required to render a police officer ineligible for jury service.[29] "Venirepersons may be excluded only where it appears that their views would prevent or substantially impair the performance of their duties as jurors in accordance with the instructions and their oath."[30]

Venireman Clark testified that he had no knowledge of or involvement with the present case, that he had never worked with the trial prosecutors, and that he had only "work associations" with some of the police witnesses and that he could evaluate their credibility the same as any other witness. He also testified that he could set aside his role as a law enforcement officer and follow the law if sitting on the jury. As this Court has previously directed:

"... (U)nless there is some fact which, we reasonably can say, in and of itself, necessarily showed prejudice, or unless there is an admission of prejudice, past or present, or unless there is something in the demeanor of the venireman which,

despite his actual words, discloses the existence of prejudice in fact, we should not convict the trial court of an abuse of discretion in overruling a challenge for cause...."[31]

"The mere possibility of prejudice on the part of a prospective juror does not disqualify him, as actual bias against the interest of the litigant must be shown."[32]

## IX.

Appellant, acknowledging his next point was not preserved for this Court's review, and that this Court has previously rejected similar claims, asks the Court to review what he characterizes as being the excessive and prejudicial use of his prior convictions during the penalty phase of his trial. Labeling this evidence as "victim impact evidence," Appellant argues that the volume of this evidence and its similarity to the charged offense was so prejudicial as to render the trial fundamentally unfair in violation of his Sixth, Eighth, and Fourteenth Amendment rights.[33]

 "During the penalty phase, both the state and the defense may introduce any evidence pertaining to the defendant's character," including evidence detailing the circumstances of prior convictions, evidence of a defendant's prior unadjudicated criminal conduct, and evidence of the defendant's conduct that occurred subsequent to the crime being adjudicated.[34] There was no error on the

---

29. Section 494.425.

30. *State v. Jones*, 979 S.W.2d 171, 184 (Mo. banc 1998).

31. *Moss v. Mindlin's Inc.*, 301 S.W.2d 761, 771–72 (Mo.1957).

32. *Meeker v. Shelter Mut. Ins. Co.*, 766 S.W.2d 733, 747 (Mo.App.1989); *State v. Johnson*, 721 S.W.2d 23, 31 (Mo.App.1986); *Leisure v. State*, 828 S.W.2d 872, 876 (Mo. banc 1992).

33. Appellant cites to *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), to support his contention that Fourteenth Amendment due process rights provide a mechanism for relief in this situation.

34. *State v. Christeson*, 50 S.W.3d at 269; *Ervin*, 979 S.W.2d at 158; *State v. Parker*, 886 S.W.2d 908, 924 (Mo. banc 1994); *State v. Zeitvogel*, 707 S.W.2d 365, 370 (Mo. banc 1986).

part of the trial court for allowing into evidence Appellant's prior convictions for unlawful use of a weapon, multiple violations of an order of protection restraining Appellant from contact with Ms. Cole, and Appellant's child support payment record. This evidence is more than "victim impact evidence," which concerns the "personal characteristics of the victim and the emotional impact of the crimes on the victim's family." [35]

## X.

Appellant also disputes the trial court's sustenance of the State's motion in limine to preclude a line of inquiry by the defense when examining the punishment phase witnesses regarding their willingness to visit him in prison. Appellant contends that, when facing the death penalty, the sentencer may not exclude any aspect of a defendant's character or record that could provide a basis for a lesser punishment.[36] Appellant believes the excluded evidence was necessary to counter the State's argument that death was appropriate where the defendant's prior encounters with the criminal justice system demonstrate his inability to adjust to prison life.

While it is true, in capital cases, that mitigating evidence from the defendant's character or record cannot be excluded, there is no limit on the "traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." [37] An extended analysis of this issue is not re-quired, however, because what is decisive on this point is the fact that Appellant did not preserve it for review. As this Court noted in *State v. Purlee:*

> A ruling in limine is interlocutory only and is subject to change during the course of the trial. The motion in limine, in and of itself, preserves nothing for appeal. Accordingly, the proponent of the evidence must attempt to present the excluded evidence at trial, and if an objection to the proffered evidence is sustained, the proponent must then make an offer of proof. (Citations omitted).[38]

Appellant chose to alter his inquiry of the penalty-phase witnesses instead of attempting to elicit the testimony in dispute, object to its exclusion, and make an offer of proof. The trial court did not err as Appellant claims, by "refusing to allow" the witnesses to testify on this issue, and cannot be convicted for an error it did not commit.[39]

## XI.

Appellant's final two points concern alleged trial court errors in the submission of specific jury instructions. Appellant first claims the trial court erred in not sustaining his objection to submitting Instruction No. 21 (MAI–CR3d 313.46A). According to Appellant, this instruction directs the jury to consider all of the circumstances in determining if the sentence should be death, but fails to require the same consideration in deciding if the penalty should be life in prison without proba-

**35.** *Payne,* 501 U.S. at 817, 111 S.Ct. 2597.

**36.** *Skipper v. South Carolina,* 476 U.S. 1, 4, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

**37.** *Lockett,* 438 U.S. at 604 n. 12, 98 S.Ct. 2954.

**38.** *State v. Purlee,* 839 S.W.2d 584, 592 (Mo. banc 1992).

**39.** *State v. McCullum,* 63 S.W.3d 242, 260 (Mo.App.2001).

tion or parole. Appellant argues that this prejudiced him in violation of his Sixth, Eighth, and Fourteenth Amendment rights because the instruction left the jury free to ignore the mitigating evidence while determining whether death or life was the appropriate punishment.

Appellant's second claim of instructional error involves Instruction No. 22 (MAI–CR3d 313.48A), the "verdict mechanics" instruction. Appellant argues this instruction specifically references consideration of aggravating circumstances in relation to determining if the penalty should be life in prison or death, but does not specifically reference consideration of mitigating evidence during this consideration. Appellant contends this instruction is fatally flawed, and does not comply with section 565.030.4(3), for omitting an essential "third step" directing the jury to weigh the mitigating circumstances as compared to the aggravating circumstances when determining the appropriate sentence.[40]

This Court, however, as Appellant concedes, has previously rejected both of these arguments in *State v. Storey*.[41] Instruction No. 21 "adequately informs the jury that it must consider all of the circumstances, including the mitigating circumstances, in determining the appropriate punishment."[42] Instruction No. 22 directs the jury to consider "all of the evidence and instructions of law" when determining the level of punishment, which includes in this case Instruction

No. 20 specifically requiring the jury to consider any fact or circumstance in mitigation of punishment. These instructions in no way preclude the jury from giving effect to the mitigating evidence, and having ruled on these issues previously, an extended discussion on either point would have no precedential value.

## XII.

This Court independently reviews the proportionality of all death sentences. Under section 565.035.3, RSMo 2000, this Court is required to determine whether:

(1) the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;

(2) the evidence supports the jury's finding of a statutory aggravating circumstance;

(3) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence, and the defendant.

Having thoroughly reviewed the record, this Court concludes that there is no evidence to suggest that the punishment imposed was a product of passion, prejudice, or any other arbitrary factor.

We next review the trial court's findings to determine if the evidence supports, beyond a reasonable doubt, the existence of an aggravating circumstance and any other circumstance found.[43] In this

---

**40.** Section 565.030.4 requires the jury to assess the punishment at life imprisonment without the eligibility of parole (1) if the jury does not find beyond a reasonable doubt at least one statutory aggravating circumstance, (2) if the jury does not find that the evidence in aggravation of punishment warrants imposition of the death sentence, (3) if the jury concludes that there is evidence in mitigation of punishment that outweighs the evidence in aggravation of punishment, or (4) if the jury

decides under all the circumstances not to assess punishment at death. Section 565.030.4, RSMo 2000.

**41.** 40 S.W.3d 898, 912–13 (Mo. banc 2001).

**42.** *Id.* at 912.

**43.** Section 565.035, RSMo 1994; *Christeson*, 50 S.W.3d at 272; *Clayton*, 995 S.W.2d at 478.

case, the jury unanimously found two statutory aggravating circumstances as a basis for considering the death sentence. The evidence supports, beyond a reasonable doubt, a finding that the murder of Anthony Curtis was outrageously and wantonly vile, horrible, and inhuman involving the depravity of mind, and that it was committed while Appellant was engaged in the perpetration of a burglary.[44]

 Finally, this Court concludes that the death sentences in this case are neither excessive nor disproportionate to the penalty imposed in similar cases, considering the crime, the strength of the evidence, and the defendant. This Court has upheld sentences of death in similar cases where the defendant committed murder while engaged in the perpetration of a burglary or where the defendant evidenced a depravity of mind through acts of repeated and excessive physical abuse.[45] The death sentence has also been found appropriate where the fatal blow is dealt to the victim while the victim is lying injured and helpless, which the facts seem to indicate here.[46]

 Appellant claims that if the death penalty is reserved for crimes requiring deliberation, then the sentence of death is disproportionate for a crime committed in manifest anger and rage. As previously noted, this Court found there to be sufficient evidence from which a reasonable jury could find the element of deliberation beyond a reasonable doubt. The fact that Appellant may have been angry or enraged at the time of the murder does not make the sentence of death disproportionate from other cases in which the death penalty has been imposed.[47] The penalty in this case is neither excessive nor disproportionate in light of the defendant, the crime and the strength of the evidence.

## XIII.
The judgment is affirmed.

All concur.

---

44. Section 565.032.2(7), and (11) RSMo 1994.

45. *State v. Kreutzer,* 928 S.W.2d 854 (Mo. banc 1996); *State v. Ramsey,* 864 S.W.2d 320, 328 (Mo. banc 1993); *State v. Griffin,* 756 S.W.2d 475 (Mo. banc 1988); *State v. Schneider,* 736 S.W.2d 392 (Mo. banc 1987). See also *Johns,* 34 S.W.3d at 114–15; *Knese,* 985 S.W.2d at 778; *Ervin,* 979 S.W.2d at 165–66; *Johnston,* 957 S.W.2d at 756; *State v. Taylor,* 929 S.W.2d 209, 222 (Mo. banc 1996).

46. See *Johns,* 34 S.W.3d at 114–15; *State v. Middleton,* 995 S.W.2d 443, 467 (Mo. banc 1999); *State v. Tokar,* 918 S.W.2d 753, 773 (Mo. banc 1996).

47. *State v. Roberts,* 948 S.W.2d 577, 588 (Mo. banc 1997); *State v. Simmons,* 955 S.W.2d 729, 750 (Mo. banc 1997); *Johnston,* 957 S.W.2d at 740; *State v. Mease,* 842 S.W.2d 98, 111, 115 (Mo. banc 1992); *State v. Feltrop,* 803 S.W.2d 1, 21 (Mo. banc 1991).