STATE of Missouri, Respondent,

v.

Mark E. LEWIS, Appellant.

No. ED 86961.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 3, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 16, 2007.

Nancy A. McKerrow, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daneil N. McPherson, Assistant Attorney General, Jefferson City, MO, for respondent.

GARY M. GAERTNER, Sr., Judge.

Appellant, Mark E. Lewis ("Defendant"), appeals the judgment of the Circuit Court of Audrain County convicting him, after a jury trial, of child molestation in the first degree, section 566.067, RSMo 2000.[1] Defendant was sentenced as a pri-

or and persistent offender to a term of thirty years' imprisonment. We affirm.[2]

Defendant began living with Abigail Lewis ("Mother") and her three children in 2000. Mother has two sons, A.L.M. and M.J., and a daughter, A.M. ("Victim"). Victim was born in April of 1996. On October 14, 2003, Victim informed Mother that Defendant had touched her in between her legs and made her put "it in her mouth for a second." After this discussion with Victim, Mother called the Division of Family Services. Mother separated from Defendant that day and applied for an order of child protection to keep Defendant away from Victim.

On December 22, 2003, Defendant was charged by complaint with child molestation in the first degree. On December 30, 2003, Defendant requested a public defender. On the same day, Defendant's bond was set at $50,000. On December 31, 2003, the public defender determined that Defendant was non-indigent. On January 5, 2004, a $50,000 bond was posted on Defendant's behalf. Then, on January 28, 2004, an indigency hearing was held. At this time, the associate circuit judge denied Defendant's appeal of the public defender's determination that he was non-indigent.

On February 25, 2004, a counsel status hearing was held. The associate circuit judge found that Defendant had committed a non-written waiver of his right to counsel. On May 3, 2004, Defendant appeared at his arraignment and pled not guilty. On July 2, 2004, Defendant informed the trial court that he did not have enough money saved up to hire an attorney.

---

**1.** All statutory references are to RSMo 2000, unless otherwise indicated.

**2.** Our original opinion in this case transferred the case to the Missouri Supreme Court pursuant to Rule 83.02. The Missouri Supreme

Court retransferred the case to this court on March 20, 2007. In this opinion we readopt our prior opinions and disposition of the appeal except for the prior references to transfer.

On July 15, 2004, another hearing was held by the trial court pertaining to Defendant's counsel status. During the hearing, Defendant stated that he still had contacted a number of lawyers, but had not hired one due to a lack of funds. Defendant also stated that he was earning $300–$400 per week and was paying $74 per month in child support. A public defender who was present at the hearing informed the trial court that his office originally declined to represent Defendant because a $50,000 bond was posted on Defendant's behalf. Defendant asserted that money was never exchanged between him and the bondsman. Defendant was then advised by the trial court of the dangers of self-representation.

On January 20, 2005, the State filed a second amended information contending that Defendant was a prior and persistent offender. On January 24, 2005, Defendant was tried by a jury. Defendant represented himself at the trial. Victim testified that Defendant had touched her privates. A.L.M., Victim's brother, testified that on more than five occasions when Mother was at work, Defendant would make him and his brother M.J. go outside, leaving Defendant and Victim alone in the house. Cindy Mackey, a clinical social worker, testified that Victim confirmed that Defendant "had touched and rubbed her vagina and put his penis in her mouth and in her rectum." After all of the evidence was presented, the jury found Defendant guilty of child molestation in the first degree. On February 28, 2005, Defendant was sentenced as a prior and persistent offender to a term of thirty years of imprisonment. This appeal by Defendant followed.

■ For purposes of this appeal, we will consolidate Defendant's first and second points on appeal into one point on appeal. In this point on appeal, Defendant contends the trial court plainly erred in refusing to appoint counsel to represent Defendant and forcing him to proceed to trial pro se. Defendant claims that he was financially unable to retain counsel, and never impliedly or expressly waived his right to counsel.

■ Defendant concedes that, because he did not preserve this point for review, we review for plain error. *See State v. Cole*, 71 S.W.3d 163, 170 (Mo.banc 2002). Under plain error review, we will only reverse the decision of the trial court if there was a plain error affecting a substantial right that results in manifest injustice or a miscarriage of justice. *State v. Miller*, 162 S.W.3d 7, 16 (Mo.App. E.D. 2005).

■ A person is eligible for representation by a public defender

> when it appears from all of the circumstances of the case including his ability to make bond, his income and the number of persons dependent on him for support that the person does not have the means at his disposal … to obtain counsel in his behalf and is indigent. Section 600.086.1.

A court's finding of non-indigency renders a defendant ineligible for public defender services and places on him the burden of obtaining counsel. *State ex rel. Tanzey v. Richter*, 762 S.W.2d 857, 858 (Mo.App. E.D.1989).

■ A "[d]efendant's refusal to sign a written waiver will not, however, provide him with a means to avoid a trial on the charge against him." *Id.* Accordingly, "[a] non-indigent defendant who wants counsel but refuses to hire one will be allowed to proceed pro se." *Id.* Nevertheless, the defendant should be warned of the perils of self-representation so that he may knowingly make the choice to proceed pro se. *Id.*

██ A criminal defendant is guaranteed the right to counsel. *State v. West,* 949 S.W.2d 914, 915 (Mo.App. E.D.1997). The right to counsel can be impliedly waived by a defendant who fails to retain counsel within a reasonable time. *Id.*

The guidelines for determining indigency, as it relates to one's eligibility for public defender services, states: "A defendant may be considered indigent if his/her gross pay and other sources of income do not exceed the federal poverty guideline as issued in the *Federal Register* by the U.S. Department of Health and Human Services." 18 CSR 10–3.010(2)(A)(2002).[3] The federal poverty guidelines for the year 2003 for a one-person household are $8,980 per year and for a two-person household are $12,120 per year. Annual Update of the HHS Poverty Guidelines, 68 Fed.Reg. 6456 (Feb. 7, 2003). The federal poverty guidelines for the year 2004 for a one-person household are $9,310 per year and for a two-person household are $12,490 per year. Annual Update of the HHS Poverty Guidelines, 69 Fed.Reg. 7336 (Feb. 13, 2004). The federal poverty guidelines are not dispositive in determining indigency, but rather are one of several factors the trial court should consider.

Those additional factors to consider when determining if a defendant is indigent are the defendant's debts, bond, spouse's income, parent's income, mortgage, and assets. 18 CSR 10–3.010(2)(B). Regarding the bond factor, "[i]f the defendant has been released on bail on any case in the amount of five thousand dollars ... or more, a presumption is created that the defendant is not indigent and the ability of the defendant to meet the bail must be given consideration." 18 CSR 10–3.010(2)(B)(2).

In this case, Defendant admitted in July of 2004 that he had a gross income of $300–$400 per week and was paying $74 per month in child support for his one dependent child. Because Defendant was out on bond from January 5, 2004 until the commencement of trial on January 24, 2005, we may presume that he was working during that time. We will apply the federal poverty guidelines to Defendant's income for: 1) the year 2003, when Defendant first requested the services of a public defender, and, 2) the year 2004, when Defendant was unable to hire an attorney and his trial commenced.[4]

The only evidence in the record of Defendant's income is that he earned $300–$400 per week. At a minimum that amounts to $15,600 per year. Additionally, Defendant was paying $74 per month in child support for his one defendant. If we ignore the monthly child support payment and consider Defendant to be a two-person household, his $15,600 yearly income is above both the 2003 and 2004 federal poverty guidelines. If we subtracted the $74 child support payment from Defendant's gross income, his income amounts to $14,712 per year. Defendant would then be considered a one-person household and his income still exceeds both the 2003 and 2004 federal poverty guidelines. Accordingly, because Defendant's income exceeds the 2003 and 2004 federal poverty guidelines, Defendant failed to establish that he was indigent.

Moreover, a $50,000 bond was posted on behalf of Defendant. Due to this fact, a presumption is created that Defendant is

---

3. The abbreviation "CSR" refers to the Code of State Regulations, and all references to regulations are to those in effect in 2002.

4. We note that we do not discuss or consider the 2005 federal poverty guidelines because they were released subsequent to the completion of Defendant's trial.

not indigent and Defendant has not overcome that presumption. Thus, Defendant failed to prove that he was an indigent person eligible for public defender services.[5]

■ Furthermore, under these facts, Defendant was provided ample time to procure counsel. On January 28, 2004, approximately one year prior to the commencement of Defendant's trial, Defendant's appeal of the public defender's determination that he did not qualify for public defender services was denied. The record indicates that on February 25, 2004, Defendant was warned of the perils of self-representation by the associate circuit judge. Subsequently, on July 15, 2004, the trial court informed Defendant of the perils of self-representation. After this second warning, Defendant asked the trial court "for a little extra time to allow myself to prepare." Defendant's trial did not commence until January 24, 2005, over six months after Defendant's second warning concerning the perils of self-representation.

Thus, because Defendant was ineligible for the services of a public defender and because he did not secure representation within a reasonable period of time, Defendant impliedly waived his right to counsel. Therefore, the trial court did not plainly err in refusing to appoint counsel to represent Defendant and proceeding with trial despite Defendant's lack of counsel. Point denied.

■ In his third point on appeal, Defendant argues the trial court plainly erred in allowing the State to introduce Exhibit 8, a list of acts Victim alleged Defendant had committed, including violent acts directed by Defendant against Mother. Defendant concedes that plain error is also the appropriate standard of review for this point on appeal.

■ Evidence of uncharged crimes, wrongs, or acts is inadmissible to show an accused is predisposed or has a propensity to commit criminal acts. *State v. Goodwin*, 43 S.W.3d 805, 815 (Mo.banc 2001). Admission of evidence of uncharged misconduct does not result in reversible error where the evidence is merely cumulative to other evidence previously introduced without objection. *State v. Griffin*, 876 S.W.2d 43, 45 (Mo.App. E.D.1994).

Following a hearing, Defendant affirmatively stated that he had no objection to evidence within a videotaped interview of Victim referencing physical abuse by Defendant upon Mother ("the videotape"). Defendant replied that "I would have no objections to it staying in," after the prosecutor offered to edit the videotape so the jury would not be able to hear evidence that Defendant physically abused Mother. It appeared that this evidence coalesced with Defendant's theory of the case. Thus, there is no reversible error because the disputed evidence within Exhibit 8 is merely cumulative to evidence within the videotape that Defendant agreed could be played in front of the jury. Therefore, the trial court did not plainly error in allowing the State to introduce Exhibit 8. Point denied.

Based upon the foregoing, we affirm the judgment of the trial court.

GEORGE W. DRAPER III, P.J., and ROBERT G. DOWD, JR., J., Concur.

---

5. We encourage trial courts to make an adequate record of the factors contained in 18 CSR 10–3.010(2), in order to ensure that all eligible defendants receive representation and to ensure that a sufficient record exists for appellate review.