**Michael TISIUS, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. SC 86534.

Supreme Court of Missouri,
En Banc.

Jan. 10, 2006.

Rehearing Denied Feb. 28, 2006.

Janet Thompson, J. Gregory Mermelstein, Office of Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Asst. Atty. Gen., Andrea K. Spillars, Asst. Atty. Gen., Deborah Daniels, Asst. Atty. Gen., Nathan A. Arunski, Asst. Atty. Gen., Stephanie M. Mor-

rell, Asst. Atty. Gen., Jefferson City, for Respondent.

RICHARD B. TEITELMAN, Judge.

Michael Tisius was sentenced to death for the murders of two guards at the Randolph County jail. Tisius appeals a judgment overruling his Rule 29.15 motion for post-conviction relief. The judgment is affirmed.

## FACTS

In June of 2000, Tisius was an inmate at the Randolph County Jail. Tisius' sentence was thirty days. Tisius' cellmate, Roy Vance, told Tisius that he was serving a fifty-year sentence. While incarcerated together, Tisius and Vance devised a plan in which Tisius would return to the jail and assist Vance with an escape plan.

After his release, Tisius contacted Vance's girlfriend, Tracie Bulington, who said that she wanted to carry out the escape plan. Bulington and Tisius visited the jail on several occasions. During some of these visits, Tisius carried a .22 caliber pistol that Bulington had taken from her parents' home. On June 21, 2000, Tisius and Bulington decided to break Vance out of jail. Tisius told Bulington "he was going to go in and start shooting" and that he would go "in with a blaze of glory." At 12:15 a.m. on June 22, Tisius and Bulington arrived at the jail.

Tisius and Bulington were admitted into the jail by officers Jason Acton and Leon Egley. Tisius had the pistol in his pants pocket. After making small talk for about ten minutes, Tisius drew the pistol from his pocket and, from a distance of two to four feet, shot Acton in the forehead. Officer Egley responded. Tisius shot him, Egley fell to the floor, and Tisius went to release Vance from his cell. Tisius could not open the cell and went to search for more keys. While Tisius was searching for keys, Egley, wounded and lying on the floor, grabbed Tisius' leg. Tisius killed Egley by shooting him several more times.

Tisius and Bulington fled in her automobile and were apprehended by police. Tisius waived his *Miranda* rights and offered oral and written confessions to the murders. At trial, Tisius admitted he shot the two officers, but argued that he did so without deliberation. The jury convicted Tisius of two counts of first degree murder, and he was sentenced to death. This Court affirmed the convictions and sentence on direct appeal. *State v. Tisius*, 92 S.W.3d 751 (Mo. banc 2002), *cert. denied* 539 U.S. 920, 123 S.Ct. 2287, 156 L.Ed.2d 140 (2003).

Tisius timely filed his *pro se* Rule 29.15 motion for post-conviction relief, alleging several instances of ineffective assistance of counsel. Appointed counsel filed an amended motion. The motion court held an evidentiary hearing on the amended motion and remanded the case for a new penalty phase, but denied relief on Tisius' guilt phase claims. Tisius appeals.

## STANDARD OF REVIEW

Rule 29.15 sets forth the procedure for litigating claims of ineffective assistance of counsel where the defendant has been convicted of a felony. There are two components to a claim of ineffective assistance of counsel. First, a movant must show that counsel's performance "did not conform to the degree of skill, care, and diligence of a reasonably competent attorney." *State v. Hall*, 982 S.W.2d 675, 680 (Mo. banc 1998)(citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). There is a presumption that counsel acted professionally and that any challenged action was part of counsel's sound trial strategy. *Id.* Second, if the movant establishes that

counsel's performance was not reasonably competent, then the movant must demonstrate the he or she was prejudiced by counsel's performance. *Id.* To demonstrate prejudice, a movant must show that, but for counsel's poor performance, there is a reasonable probability that the outcome of the court proceeding would have been different. *Id.*

■ "This Court will uphold the findings and conclusions of the motion court unless they are clearly erroneous." Rule 29.15(k). Findings and conclusions are clearly erroneous if, after reviewing the entire record, the appellate court has the definite and firm impression that a mistake has been made. *Moss v. State,* 10 S.W.3d 508, 511 (Mo. banc 2000).

### ANALYSIS

#### I. *Prosecutorial Misconduct*

■ Tisius contends that the prosecutor knowingly presented false and misleading evidence and argument suggesting that he, not Tracie Bulington, had stolen the gun from Bulington's mother's residence. Tisius also contends that trial counsel was ineffective for failing to object properly to this evidence and that appellate counsel was ineffective for failing to raise the issue on direct appeal.

Prior to trial, Tracie testified that she had taken the gun. She repeated this testimony during the penalty phase. During the guilt phase, Patsy Bulington testified that a few days prior to the murders, she left Tisius at her home alone while she ran an errand. Patsy then testified that on the morning of the murders, her husband called and asked her to look for the .22 caliber pistol they kept in their bedroom. Patsy discovered that the gun and a box of ammunition were missing. The prosecutor referenced Patsy's testimony during the guilt phase closing argument,

arguing as follows: "Let's talk about deliberation. This weapon was taken by stealth. We know that because Patsy Bulington told us that." Tisius' counsel objected that the argument was a "misstatement of the evidence" as it implied that Tisius had stolen the gun. The objection was overruled.

The motion court found that the reference to the gun being taken by stealth was relevant to deliberation by Tisius, Bulington, and Vance in planning the escape. The court also found that Tisius' claim of ineffective assistance for failure to preserve this point was not cognizable and that there was no prejudice due to the strength of the guilt phase evidence.

■ A freestanding claim of prosecutorial misconduct is generally not cognizable in a Rule 29.15 proceeding. Rule 29.15 is not a substitute for direct appeal. *State v. Carter,* 955 S.W.2d 548, 555 (Mo. banc 1997). Claims of trial error will only be considered in a Rule 29.15 motion where fundamental fairness requires, and then, only in rare and exceptional circumstances. *Schneider v. State,* 787 S.W.2d 718, 721 (Mo. banc 1990). If the alleged misconduct was apparent at trial, then it is an issue for direct appeal, not a Rule 29.15 proceeding. Accordingly, this Court has reviewed claims of prosecutorial misconduct in a Rule 29.15 proceeding when the alleged misconduct was serious and would not be apparent during the trial. For instance, in *Middleton v. State,* the Court reviewed a Rule 29.15 claim alleging the state's failure to disclose a "deal" with a prosecution witness. 103 S.W.3d 726, 733 (Mo. banc 2003). Unlike a claim of withheld evidence, which would not be known to a movant during trial or direct appeal, a claim involving allegedly improper argument was apparent at trial and could have been raised on direct appeal. The motion court did not clearly err in concluding that

Tisius' freestanding claims of prosecutorial misconduct are not cognizable, as such claims involve allegedly improper argument that would have been apparent at trial.

■ Counsel was not ineffective for failing to object to the allegedly improper argument. The prosecutor's evidence and argument was not false. The evidence and argument that the weapon was taken by stealth was, as the motion court found, relevant to the issue of deliberation as it indicated that taking the gun was part of the escape plan. Who actually took the gun is secondary. Moreover, there was substantial evidence of deliberation. The evidence showed that Tisius visited Vance at the jail on multiple occasions to plan the escape and test fired the gun prior to the escape attempt. Tisius carried on a conversation with one of the officers for several minutes before deciding to shoot officer Acton. He then shot officer Egley. When officer Egley, wounded and lying on the ground, grabbed Tisius' leg, Tisius shot him again. There was overwhelming evidence of deliberation[1] to support the jury's verdict. Even if counsel would have had a meritorious objection to the prosecutor's statement, the failure to make the objection was not prejudicial. The motion court did not clearly err in denying relief on Tisius' claims of prosecutorial misconduct and trial counsel's failure to object thereto.

■ Tisius' argument that appellate counsel was ineffective for failing to raise the issue on appeal is also without merit. No objection was made, so the issue was not preserved. Appellate counsel is not ineffective for failing to raise unpreserved allegations of error. *Honeycutt v. State,*

54 S.W.3d 633, 650 (Mo.App.2001). The motion court did not clearly err in denying relief on this claim.

## II. *Failure to Call a Handwriting Expert*

■ At trial, counsel attempted to introduce a letter allegedly written by Vance, which provided details of the escape plan. The letter was addressed to "Karl" and was signed by "Roy." The letter stated that that there was no "button for help" at the jail and that "camera doesn't even record anything so they wouldn't even have a clue who did it." The letter further stated that "[t]here isn't any of them that work here with enough heart to play hero as long as it's done right." The letter contains no reference to any plan to use violence against the guards. The trial court ruled the letter inadmissible because there was no foundation that Vance actually wrote the letter.

Tisius argues that the letter was crucial to his defense that he only planned to assist Vance in escaping from jail and did not contemplate killing anyone. He asserts that trial counsel was ineffective for failing to retain a handwriting expert to authenticate the letter because it was crucial to his defense that he did not deliberate.

■ "When a movant claims ineffective assistance of counsel for failure to locate and present expert witnesses, he must show that such experts existed at the time of trial, that they could have been located through reasonable investigation, and that the testimony of these witnesses would have benefited movant's defense." *State v. Davis,* 814 S.W.2d 593, 603–604 (Mo. banc 1991). If the letter had been authenticat-

---

1. "Deliberation" is "cool reflection for any length of time no matter how brief." Section 565.002(3).

ed and admitted into evidence, it would not have benefited Tisius' defense. The letter was not written by Tisius or addressed to him and, therefore, has little or no relevance to his state of mind at the time he shot the guards. The facts relevant to Tisius' state of mind are, as discussed above, his participation in planning the escape attempt, his decision to bring the gun into the jail, and his decision to shoot each guard multiple times. The letter does not show that Tisius did not deliberate prior to murdering the guards or that he was under the control of Vance and Bulington. The motion court did not clearly err in denying relief on this claim.

### III. Failure to Object to Admission of T-shirt

■ Tisius alleges that trial counsel was ineffective for failing to object to the admission of and references to a T-shirt emblazoned with the slogan "Guardians of Paradise" and the image of a "snarling, winged, tiger-like animal, his talons extended over the yin and yang sign, and his taloned wings encircling his body." He alleges that the slogan and associated imagery improperly allowed the jury to speculate that Tisius was associated with an anti-social group. Trial counsel testified at the evidentiary hearing that he did not find the T-shirt objectionable because he "had no idea what the 'Guardians of Paradise' is" and had never heard of it. The motion court found that Tisius had introduced no evidence regarding the identity or existence of the Guardians of Paradise or how the jury would have concluded it was an anti-social group. Tisius bears the burden of proving his claims of ineffective assistance of counsel. Rule 29.15(i). Without evidence as to what, if anything, the shirt referenced or meant, the motion court could have only sustained Tisius' point through speculation. Tisius did not carry his burden, and there is no reason-

able probability that Tisius was convicted and sentenced based upon the images on the shirt. The motion court did not clearly err in denying relief on this claim.

### IV. Failure to Object to Verdict Directors

■ Tisius alleges trial counsel was ineffective for failing to object at the instruction conference to the verdict directors for first and second-degree murder because the instructions failed to meaningfully distinguish between the two offenses. Tisius argues that the definition of "deliberation" in the first degree murder verdict director focuses on the passage of time and, "by that focus, eliminates consideration of 'cool reflection,' which is the essence of 'deliberation.' "

The verdict director for first degree murder was patterned after MAI–CR 3d 313.02 and contained the following paragraph:

> Third, that the defendant did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief.

The verdict director for second degree murder was patterned after MAI 3d 313.04 and was the same as the first-degree verdict director except that it omitted the deliberation instruction. The instruction properly states the statutory definition of "deliberation." *See,* section 565.002(3). Similar challenges to this definition have previously been denied. *State v. Middleton,* 998 S.W.2d 520, 524 (Mo. banc 1999); *State v. Rousan,* 961 S.W.2d 831, 851–52 (Mo. banc 1998). Counsel is not ineffective for declining to raise an objection that is foreclosed by settled authority. *Scott v. State,* 741 S.W.2d 692, 693 (Mo.App.1987). The motion court did not clearly err in denying relief on this claim.

## V. Failure to Object to Reasonable Doubt Instruction

 Tisius alleges that trial counsel was ineffective for failing to object at the instruction conference to the instruction defining "reasonable doubt." The instruction defined "proof beyond a reasonable doubt" as proof "that leaves you firmly convinced of the defendant's guilt. The law does not require proof that overcomes every possible doubt." Tisius maintains the that the term "firmly convinced" lowered the state's burden of proof by allowing the jury to "equate its firmly convinced standard with the clear and convincing evidence standard of civil cases." Similar attacks on MAI–CR 3d 302.04 have been repeatedly rejected by this Court. *State v. Brown,* 998 S.W.2d 531, 552 (Mo. banc 1999); *State v. Harris,* 870 S.W.2d 798, 811[28] (Mo. banc 1994), *State v. Debler,* 856 S.W.2d 641, 652 (Mo. banc 1993). Counsel is not ineffective for declining to raise an objection that is foreclosed by settled authority. *Scott v. State,* 741 S.W.2d 692, 693 (Mo.App.1987). The motion court did not clearly err in denying relief on this claim.

## VI. Failure to Raise Issue on Direct Appeal

 Tisius alleges that appellate counsel was ineffective for failing to raise on direct appeal issues regarding the admission and display on a large screen ten autopsy photos of the two victims. To prevail on a claim of ineffective assistance of appellate counsel, the movant must establish that counsel failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it. The claimed error must have been sufficiently serious to create a reasonable probability that, if it was raised, the outcome of the appeal would have been different. *Smith v. Rob-*bins, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

At trial, the State's first witness was the medical examiner. During the examiner's testimony, the prosecutor moved to admit the ten autopsy photos. Trial counsel objected based upon an earlier motion in limine and argued that the cause of death was not at issue and the photos were unduly prejudicial. The photographs were admitted. At the evidentiary hearing, appellate counsel testified that while she believed the admission of the photographs may have "technically" been a good point, she did not believe a point on this issue "had much of a chance on appeal." Counsel also noted that the State does not have to stipulate to facts and is required to prove the death of the victims. The motion court found that appellate counsel had a reasonable strategic motive for not raising the issue.

 The autopsy photographs were relevant to the issues of deliberation and intent because they showed the nature, location, and extent of the wounds. See, *State v. Ervin,* 979 S.W.2d 149, 159 (Mo. banc 1998)(multiple wounds support inference of deliberation). The graphic nature of the photographs does not necessarily compel the conclusion of undue prejudice. "Insofar as photographs tend to be shocking or gruesome, it is almost always because the crime is shocking or gruesome." *State v. Rousan,* 961 S.W.2d 831, 844 (Mo. banc 1998). The projection of previously admitted photographs is permissible when the enlarged photographs serve legitimate purposes. *State v. Wolfe,* 13 S.W.3d 248, 263–264 (Mo. banc 2000). A claim of error regarding the admission or projection of the photographs would not likely have required reversal on appeal. The motion court did not clearly err in finding that appellate counsel was not ineffective.

## VII. *Improper Statements on Voir Dire and in Argument*

Tisius alleges several instances during voir dire and in guilt phase closing argument in which the prosecutor committed misconduct and in which trial counsel was ineffective for failing to object.[2]

### A. *Voir Dire*

During voir dire, the prosecutor told the panel that a county prosecutor can request assistance from the attorney general in a case and that the Randolph County prosecutor had requested such assistance because the county "has not had the misfortune of having that many murders so it is not something with which he comes into contact regularly." Trial counsel did not object to this statement. In his amended motion, Tisius alleged that this statement suggested to the jury panel that the case was among the worst in the county and warranted the death penalty. The prosecutor's explanation did not suggest a qualitative difference between Tisius' case and other murder cases. The motion court did not clearly err in finding that Tisius was not prejudiced by the comment and that trial counsel was not ineffective for failing to object.

Tisius also alleges that counsel was ineffective for failing to ask the panel whether they could consider the different mental states for first and second-degree murder. Tisius contends that counsel's failure prevented him from discovering whether prospective jurors could impartially consider second degree murder in a case in which law enforcement officers were the victims. Jurors are presumed to follow the court's instructions. *State v.*

*Gilbert,* 103 S.W.3d 743, 751 (Mo. banc 2003). The jury was instructed on the difference between first and second-degree murder. Tisius' speculative allegations do not overcome the presumption that the jury followed the instructions. The motion court did not clearly err in denying relief on this claim.

### B. *Closing Argument*

Tisius alleges five instances in which counsel was ineffective for failing to object to statements made in closing arguments.

First, Tisius alleges that counsel was ineffective for failing to object to the following argument:

Did the defendant commit murder in the second degree? Yes. Because murder in the second degree is a lesser included offense. What does that mean? That means that if you commit murder in the first-degree, murder in the second degree has also been committed. You have to in order to commit murder in the first degree have done something more. And that was deliberation. That's the only difference between murder in the second degree of one submission than the other, murder in the second. But keep in mind if you find that he did the three elements he shot these two men, he knew that he was doing was likely to kill. And he did it after deliberation, you don't even have to consider the rest of it. You look at murder second if and only if you do not believe that we proved those things beyond a reasonable doubt. But we did.

Tisius claims that this was an improper "acquittal first" argument because

---

2. The claims of prosecutorial misconduct for allegedly improper argument were claims for direct appeal. Unlike a claim of withheld evidence, which would not be known to an appellant during trial or direct appeal, a claim involving allegedly improper argument was apparent at trial and could have been raised on direct appeal. Rule 29.15 is not a substitute for direct appeal. The claims of prosecutorial misconduct are not cognizable.

it told the jury that it could only consider second degree murder if they first acquitted him of first degree murder. Missouri's instructions on lesser-included offenses do not require that the defendant first be acquitted of the greater offense before the jury can consider the lesser offense. *State v. Wise*, 879 S.W.2d 494, 517 (Mo. banc 1994). Instead, MAI–CR3d 313.04 provides that juries are allowed to consider the lesser-included offense if they "do not find the defendant guilty" of the greater offense. *Id.* Therefore, an acquittal first argument is a misstatement of the law and can constitute reversible error.

Tisius' claim is without merit. The jury was properly instructed on lesser-included offenses with an instruction tracking MAI–CR3d 313.04. The jury is presumed to have followed the trial court's instructions. *State v. Gilbert*, 103 S.W.3d 743, 751 (Mo. banc 2003). Additionally, even if this argument were considered an "acquittal first" argument, the strength of the evidence of deliberation precludes a finding of prejudice.

■■■■ Second, Tisius alleges that counsel was ineffective for failing to object to an improper argument that was contrary to the evidence. Deputy Willie White testified that, during the escape attempt, he returned to the jail and saw Tisius holding a gun. White then heard four popping noises and saw Tisius turn to Bulington and say, "Get him. Get him. Get him." The prosecutor argued that: "He [Tisius] gave her [Tracie Bulington] the directions for Willie White who's outside at that point watching, saying, 'Get him. Get him. Get him.'" However, in the penalty phase, Tracie Bulington testified that after Tisius fired the first shot at Deputy Acton, Deputy Egley ran around the counter and Tisius yelled "get him." Although trial counsel testified at the evidentiary hearing that it was a mistake to

not object, the record reflects that the prosecutor's argument was not necessarily inconsistent with the evidence. The different accounts given by White and Bulington support the reasonable inference that Tisius yelled "get him" on two different occasions: first, directed at Egley prior to shooting him; and second, at White, who could see Tisius and thus making it possible that Tisius could also see him. A prosecutor may argue reasonable inferences from the evidence. *Middleton v. State*, 103 S.W.3d 726, 742 (Mo. banc 2003). Additionally, the uncontradicted testimony that Tisius, gun in hand and having just shot Acton, was yelling "get him," is highly relevant to the Tisius' deliberation on the murders. Whether he was referring to White or Egley is secondary. The motion court did not clearly err in denying relief on this claim.

■■■■ Third, Tisius alleges that trial counsel was ineffective for failing to object to the use of photographs of the victims' bodies during closing argument. The prosecutor used the photographs to show the number and location of gunshot wounds in order to support the inference that Tisius deliberated on the murders. As noted earlier, the photographs were admissible. Counsel is not ineffective for failing to make a meritless objection. *Middleton v. State*, 103 S.W.3d 726, 741 (Mo. banc 2003).

■■■■ Fourth, Tisius alleges that trial counsel was ineffective for failing to object to a rebuttal argument in which the prosecutor argued that Tisius' argument that he had not deliberated was "incredible sophistry" and an "attempt to fool" the jury. Tisius argues that this suggested that defense counsel was lying and that the prosecutor had personal knowledge of Tisius' guilt. The prosecutor's argument was response to defense counsel's argument that Tisius had not deliberated be-

cause Deputy Egely was not killed immediately with a shot at point blank range. However, defense counsel had earlier argued that Tisius "certainly wasn't coolly and calmly reflecting on whether or not to shoot Jason Acton." The prosecutor's argument was thus directed at pointing out a perceived inconsistency between the defense argument that an immediately fatal, point blank shot would have shown deliberation in one instance but not the other. Comments directed at the tactics of defense counsel are permissible. *State v. Collins,* 150 S.W.3d 340, 350 (Mo.App. S.D. 2004); *State v. Hanson,* 974 S.W.2d 617, 619 (Mo.App. E.D.1998). The motion court did not clearly err in denying this claim.

Finally, Tisius alleges that counsel was ineffective for failing to object to the prosecutor's argument that Tisius' statement that he was sorry was "little consolation to deputy Acton and deputy Egley. He said he was sorry after he was caught." Later, the prosecutor also argued that "[A]nd somehow because he shows remorse there's no deliberation?" Tisius argues that this comment was inflammatory and was an improper comment on his right to remain silent. This claim has no merit. Tisius argued that his remorse indicated that he did not deliberate. A prosecutor is entitled to rebut a defense argument. *State v. Jones,* 979 S.W.2d 171, 177 (Mo. banc 1998).

## CONCLUSION

The motion court did not clearly err in denying relief on Tisius' amended motion for post-conviction relief on the guilt phase of his trial. The judgment is affirmed.

All concur.