**STATE of Missouri, Respondent,**

v.

**Anthony BROWN, Appellant.**

**No. SC 90853.**

Supreme Court of Missouri,
En Banc.

May 17, 2011.

Gwenda R. Robinson, Public Defender's Office, St. Louis, for Brown.

Terrence M. Messonnier, Attorney General's Office, Jefferson City, for the State.

RICHARD B. TEITELMAN, Judge.

Anthony Brown appeals his convictions for murder in the second degree, section 565.021 [1], and armed criminal action, section 571.015. At trial, Brown claimed self-defense. During closing arguments, the trial court permitted the State to use a gun as a demonstrative exhibit to rebut Brown's self-defense argument. The State used the gun to show that the victim could not have carried and drawn the gun as Brown asserted. There was no evidence that the gun used as an exhibit in closing arguments was similar in size or shape to the victim's gun. Consequently, the judgment is reversed, and the case is remanded.

## FACTS

Brown and the victim attended a children's birthday party. They began to argue. Brown knew the victim sometimes carried a gun. As other guests began arguing, Brown went to retrieve a gun. Brown held the gun and approached victim. Brown and victim resumed their argument. Brown fired several shots and fatally wounded victim. Brown was charged with first-degree murder and armed criminal action.

At trial, Brown testified that he shot the victim in self-defense because he believed his life was in danger. Brown testified that the victim was carrying a gun in the left pocket of his sweatpants and that he fired when the victim reached for the gun. Two other witnesses also testified that the victim was carrying a gun in the left pocket of his sweatpants and, prior to the shooting, the victim placed his hand in his left pocket. In addition to the evidence that the victim was carrying a gun, Brown also presented evidence that the victim was known to carry a gun, was upset with

and had threatened Brown multiple times, and that Brown told his (Brown's) mother the day after the shooting that the shooting was self-defense because he was afraid for his life.

Prior to closing arguments, the State informed the court that it intended to use a .38 revolver to demonstrate that the gun the victim was carrying would not have fit in his left sweatpants pocket in the way described by the witnesses. The court overruled Brown's objection that the gun should not be used in closing argument because it had not been admitted into evidence and there was no evidence that the gun was similar to the victim's gun. The State used the victim's sweatpants and the .38 revolver as demonstrative exhibits during closing argument.

During deliberations, the jury asked to see the revolver the State had used in closing argument. The trial court did not allow the jury to view the revolver because it "was not received in evidence." The trial court also informed the jury that "[y]ou are to be guided by your recollection of the evidence."

## ANALYSIS

When counsel objects to a closing argument, an appellate court will reverse the trial court's decision with regard to the argument only upon a showing of abuse of discretion by the trial court. *State v. Shurn*, 866 S.W.2d 447, 460 (Mo. banc 1993).

A prosecutor is allowed to argue the evidence and all reasonable inferences from the evidence during closing arguments. *State v. Harris*, 870 S.W.2d 798, 814 (Mo. banc 1994). Although the revolver used by the State in its closing argument was not admitted into evidence, it does not follow that the prosecutor can use

1. All statutory references are to RSMo 2000 unless otherwise noted.

an otherwise inadmissible weapon to rebut the Brown's defense. The latitude given to parties in closing does not serve as an end run around the law of evidence.

 Demonstrative evidence, including a weapon, is admissible if the evidence is both legally and logically relevant. *State v. Freeman*, 269 S.W.3d 422, 427 (Mo. banc 2008). Logical relevance refers to the tendency "to make the existence of a material fact more or less probable." *State v. Anderson*, 306 S.W.3d 529, 538 (Mo. banc 2010). Legal relevance refers to the assessment of probative value relative to the risk of "unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Id.* Therefore, when assessing the relevance of demonstrative evidence, a court must ensure that the evidence is a fair representation of what is being demonstrated and that it is not inflammatory, deceptive or misleading. *Freeman*, 269 S.W.3d at 427; *see also State v. Silvey*, 894 S.W.2d 662, 667–68 (Mo. banc 1995).

The State used the .38 revolver to rebut Brown's self-defense theory by demonstrating that it was impossible for the victim to have carried and drawn his gun in the manner described by defense witnesses. Therefore, under the rules of evidence, the relevance of the .38 revolver was dependent on its physical similarity with the victim's gun. If the .38 revolver differed substantially in size or shape from the victim's gun, then the weapon likely would be inadmissible because it did not constitute a "fair representation of what is being demonstrated." *Freeman*, 269 S.W.3d at 427.

The limitations on the admissibility of demonstrative evidence are illustrated in, among other cases, *State v. Wynne*, 353 Mo. 276, 182 S.W.2d 294 (1944); *State v. Grant*, 810 S.W.2d 591, 592 (Mo.App.1991);

and *State v. Silvey*, 894 S.W.2d 662 (Mo. banc 1995).

In *Wynne*, the trial court in a murder trial admitted a pistol unconnected with the Brown for the purpose of demonstrating how far a pistol stuck out of an individual's pocket. 182 S.W.2d at 300. The court reversed the conviction because the demonstration was improper. There was no testimony that the individual carried a gun similar to the one used in the demonstration, no testimony regarding the size of the individual's pockets, and the demonstration could have been just as effective without the use of the pistol as with the use of the pistol. *Id.* at 300.

In *Grant*, the court reversed a conviction because the prosecutor asked a witness to hold a pistol unconnected to the Brown to the prosecutor's head in an attempt to demonstrate how the witness could see into the chamber of the gun and observe that it was loaded. There was no evidence that the pistol used in the demonstration was at all similar to the one used in the crime. 810 S.W.2d at 592. In addition, it was not shown whether bullets would have been visible if the gun were actually loaded. *Id.*

Finally, in *Silvey*, the Brown argued that the trial court erred by allowing the State to use a "butterfly knife" while questioning witnesses. Unlike *Wynne* and *Grant*, the demonstration was proper because the State had shown through the testimony of three witnesses that the knife used at trial was similar to the knife owned by the Brown. 894 S.W.2d at 668. Additionally, the demonstration was particularly relevant because the knife's "unique and almost indescribable character" made it difficult to describe accurately solely by testimony. *Id.* The court held that the demonstration was proper because the State established that the knife used in the demonstration was similar to the Brown's

knife and because the demonstration was relevant to show that the weapon could be used to threaten the victim. *Id.* at 668–69.

Similar to *Wynne* and *Grant,* and unlike *Silvey,* the problem in this case is that the State did not show that the size and shape of the victim's gun was similar to the size and shape of the .38 revolver shown to the jury. The State could show only that the victim's gun was "shiny looking" and had a light or pearl handle. This vague, cosmetic description of the victim's gun is insufficient to establish the size and shape of the gun. Without evidence of the size and shape of the victim's gun, there is no way to determine whether the .38 revolver used by the State fairly represented the victim's gun and the impossibility of the victim carrying and drawing the gun in the manner described by the witnesses. Consequently, the State's closing argument demonstration was necessarily speculative and carried with it the distinct possibility of misleading the jury. The State would not have been able to admit the .38 revolver evidence as evidence at trial. Therefore, the State should not have been able to bypass normal evidentiary limitations by first showing the revolver to the jury in closing argument to rebut Brown's self-defense argument.

■ The error was not harmless. Several witnesses, including Brown, offered testimony in support of the self-defense theory. The State cross-examined these witnesses and produced witnesses who disputed Brown's claim of self-defense. Thus, the State's closing argument demonstration was not the only evidence tending to disprove Brown's self-defense theory. However, it is apparent that the jury attached significance to the State's demon-

stration because, during deliberations, the jury asked to see once again the .38 revolver as well as the sweatpants worn by the victim. The jury would not have asked to see the .38 revolver and sweatpants if it was not considering the State's improper closing argument demonstration. Under these circumstances, there is a substantial likelihood that the jury's decision was influenced by the improper demonstration and that Brown was thereby prejudiced.

The judgment is reversed, and the case is remanded.

RUSSELL, WOLFF, BRECKENRIDGE and STITH, JJ., concur.

FISCHER, J., dissents in separate opinion filed.

PRICE, C.J., concurs in opinion of FISCHER, J.

ZEL M. FISCHER, Judge, dissenting.

I respectfully dissent from the principal opinion. The question before this Court is not whether the gun in question was properly admitted into evidence as demonstrative evidence. It is clear from the record that the gun was never admitted into evidence. Instead, the question before this Court is whether the trial court abused its discretion in allowing the State to use the gun as a prop during its closing argument and whether the jury would have bought Brown's self-defense story had the trial court prohibited the demonstration. I would hold that the trial court did not abuse its discretion in allowing the demonstration,[1] which was directed at the credibility of the defense theory of self defense, and based on the strength of the evidence

---

1. The trial court was in a far superior position than this Court to know and understand what effect the demonstration, which included gestures and a revolver as a prop, would have on the jury and to exercise its broad discretion to determine whether the demonstration was fair under the facts of the case. *See State v. Silvey,* 894 S.W.2d 662, 669 (Mo. banc 1995).

as demonstrated on the record, I would affirm.

## Facts

Brown appeals from the judgment entered upon a jury verdict finding him guilty of second degree murder and armed criminal action. The trial court sentenced Brown to 30 years imprisonment on the murder count and three years imprisonment on the armed criminal action count, to be served consecutively.

On appeal, Brown does not even challenge the sufficiency of the evidence to support the judgment. Instead, he contends the trial court abused its discretion when it overruled his objection to the State's use of a sample gun during closing argument that had not been admitted into evidence.

A proper analysis of this issue requires that the facts in this case be reviewed in the light most favorable to the jury's verdict. *State v. Davis,* 318 S.W.3d 618, 621 (Mo. banc 2010). Upon such review, the evidence shows that Brown and the victim got into an argument while attending a birthday party at Brown's grandmother's house. During the argument, Brown went and retrieved his .38 caliber revolver. He then shot the victim four times including in the back, killing him.[2] Brown fled the scene, which demonstrates consciousness of guilt, and no gun was found on or near the victim.

At trial, Brown did not dispute killing the victim but claimed it was in self defense. The evidence to support the theory of self defense came from Brown and his relatives, which the jury was not required to believe. Brown and his grandmother both testified that the victim had a gun hanging out of his left pants pocket. They also testified that at the time Brown shot the victim, the victim had reached for the gun with his right hand. Brown's aunt also testified to these same facts except that she testified the gun was either in his left pants pocket or in his waistband on his left· side. Both Brown's grandmother and aunt· demonstrated how the victim had been allegedly carrying the gun during their testimony. The alleged gun possessed by the victim was not found at the scene or, for that matter, ever was produced by anyone.

Prior to closing argument, the State requested that it be allowed to the use a .38 caliber revolver for demonstrative purposes during its closing argument. The revolver had not been admitted into evidence, and· the State informed the· trial court that it would not seek to admit it into evidence. The State explained that it intended to use the revolver to gesture how the victim would have had to reach across his body to draw the weapon. During closing argument, the State further explained the gun was unloaded, and it is clear from the record that the gun was merely used for demonstration purposes.

Brown objected to the State's request on the grounds that the revolver "was not introduced into evidence and was not shown to the jury or utilized during the course of the trial in any way, shape or form." Brown also argued the revolver was irrelevant because nobody had testified that the victim had a .38 caliber revolver and that any relevance of the revolver was outweighed by the prejudicial value of the State "pulling out a .38 caliber revolver and showing it to the jury."

---

**2.** "[The victim] had a gunshot wound that entered his back and exited the front of his chest. He had a gunshot wound that entered the front of his abdomen. He had a gunshot wound that entered his body at the right leg and a gunshot wound that entered the body at the left shoulder."

The trial court overruled Brown's objection, and after the State demonstrated exactly how the gun would be used, the trial court permitted the State to use the gun to make the demonstration as previously gestured. The trial court explained that *"because of the nature of how this event went down ... having the ability to demonstrate to the jury the believability or non-believability of both side's story [was] appropriate."* During the State's closing argument, the prosecutor made the demonstration while arguing the implausibility of the victim's ability to reach across his body to get the gun:

There is no self-defense. It's bogus. The facts of this case are very simple. [Brown] had a gun on him by his own admission and he's acting like a tough guy. You have to decide whether or not you think that [the victim] had a weapon. Let me suggest to you, and if you think about it, the explanation given by the witnesses who testified as to where the weapon was kept and what they saw. These are the pants that were being worn that day by [Brown]—by [the victim]. The pockets—this is the front, by the way. The tag is in the back. Notice how the pockets are cut, toward the back. Now, if [the victim] in fact had a weapon, as it was described by [Brown] and by [Brown's aunt]—this weapon by the way, is unloaded and it has a clip across here so the trigger doesn't pull— they say that they saw the weapon in his left pocket and the grip was hanging out. They described it as a white pearl grip. The description of [Brown] and his witnesses were that what happened was that [the victim] went for the gun like this (indicating) to get it out of his pocket. And that's when [Brown] says he took the gun from behind his back and shot him repeatedly, four times.

After closing argument, the jury retired to the jury room to deliberate. During deliberations, the jury submitted the following question to the court: "Can the sheriff please bring in the gun used as a sample? We would like [to] see the gun and return [it] to the sheriff." The trial court responded, "The gun was not received in evidence. I'm only able to give you what was received in evidence. You are to be guided by your recollection of the evidence." Before sending this response back the jury, the court asked if either the State or Brown had any problems with it. Both sides answered that they did not.

### Analysis

The principal opinion comes to the wrong result because it analyzes this case from the wrong premise. The wrong premise is that the State sought to use the revolver in its closing argument to circumvent the rules of evidence and thereby have the revolver *de facto* admitted into evidence as demonstrative evidence. Op. at 14–15. The principal opinion relies on this premise to analyze the use of the revolver under the standard of admissibility for demonstrative evidence. Op. at 14–15. This premise is incorrect because it is clear from the jury's question regarding the gun and the trial court's response thereto that the gun was not in evidence nor was the jury ever under the impression that the gun was admitted into evidence. The jury's own question demonstrates that it was aware that the gun was not evidence because it asked: "Can the sheriff please bring in the gun *used as a sample?* " (Emphasis added.) The trial court response also specifically informs the jury that *"[t]he gun was not received into evidence."*

Brown asserts that the trial court abused its discretion in overruling his objection to the State using the gun as a prop while conducting a demonstration during closing argument because its use

was more prejudicial than it was probative. Brown argues that the State should not have been able to use the gun because the gun was never identified as being the same as or similar to the gun that allegedly belonged to the victim. He contends that but for the improper use of the gun, there was a reasonable probability that the jury's verdict would have been different.

"The standard of review for alleged error in closing argument depends upon whether defense counsel objects." *State v. Shurn*, 866 S.W.2d 447, 460 (Mo. banc 1993). The record is clear in this case that Brown's counsel objected to the State's use of the gun in closing argument and lodged a continuing objection against its use. "Where defense counsel objects, [this Court] will reverse the trial court's decision with regard to closing argument only upon a showing of abuse of discretion by the trial court." *Id.* A trial court has broad discretion to permit or prohibit statements during closing argument, and this Court does not reverse the trial court's ruling unless the trial court abuses this discretion and prejudices the defendant. *State v. Taylor*, 134 S.W.3d 21, 27 (Mo. banc 2004). "In order for prosecutor's statements to have such a decisive effect, there must be a reasonable probability that the verdict would have been different had the error not been committed." *Id.* (quoting *State v. Williams*, 97 S.W.3d 462, 474–75 (Mo. banc 2003)). "The trial judge occupies a superior vantage point for balancing probative value and prejudicial effect" of demonstrations. *Silvey*, 894 S.W.2d at 669. In this case, for example, the trial court seemed more focused on the gestures demonstrated rather than the particular caliber and size

of the revolver, which seems to be the misplaced focus of the principal opinion.

The principal opinion's analysis of whether Brown demonstrated he was prejudiced by the State's use of the gun as a prop in closing argument is contrary to the well-settled law that "[t]he jury is presumed to have followed the trial court's instructions." *Tisius v. State*, 183 S.W.3d 207, 217 (Mo. banc 2006). The principal opinion concedes that "the State's closing argument demonstration was not the only evidence [3] tending to disprove [Brown's] self-defense theory." Op. at 16. The principal opinion then, however, speculates that:

> [I]t is apparent that the jury attached significance to the State's demonstration because, during deliberations, the jury asked to see once again the .38 revolver as well as the sweatpants worn by the victim. The jury would not have asked to see the .38 revolver and sweatpants if it was not considering the State's improper closing argument demonstration. Under these circumstances, there is a substantial likelihood that the jury's decision was influenced by the improper demonstration and that defendant was thereby prejudiced.

Op. at 16. In *Tisius*, this Court reiterated "speculative allegations do not overcome the presumption that the jury followed the instructions." *Id.* at 216.

In this case, the jury was instructed numerous times that it could base its verdict only on the evidence. The first instruction read to the jury by the court, Instruction No. 1, indicated that it was the jury's duty "to determine the facts and to determine them only from the evidence and the reasonable inferences to be drawn

---

3. As previously discussed, the State's closing argument demonstration was not evidence at all. The jury was instructed that the statement of the attorneys was not evidence. However, the undisputed physical evidence that Brown shot the victim once in the back and three additional times is strong evidence contrary to self defense.

from the evidence" and that the jury's decision had to "be based only on the evidence presented to you in the proceedings in this courtroom." Instruction No. 2 further explained that the jury could not "consider as evidence any statement or remark or argument by any of the attorneys addressed to another attorney or the Court" nor could it consider the questions asked by counsel to be evidence.

Prior to closing argument, the jury was given Instruction No. 13 and Instruction No. 14. Instruction No. 13 directed each member that he or she "must decide the case for yourself, but you should do so only after you have considered all the evidence." Instruction No. 14, the instruction regarding closing argument, further advised the jury as follows:

The attorneys will now have the opportunity of arguing the case to you. Their arguments are intended to help you in understanding the evidence and applying the law, *but they are not evidence.*

You will bear in mind that it is your duty to be *governed in your deliberations by the evidence* as you remember it, the reasonable inferences which you believe should be drawn therefrom, and the law as given in these instructions.

It is your duty, and yours alone, to render such verdict under the law *and the evidence* as in your reason and conscience is true and just.

The state's attorney must open the argument. The defendant's attorney may then argue the case. The state's attorney may then reply. No further argument is permitted by either side. (Emphasis added.)

A prosecutor is free to comment about the evidence and the credibility of a defendant's case during closing argument. *State v. Henke,* 901 S.W.2d 921, 924 (Mo. App.1995) (quoting *State v. Harris,* 870 S.W.2d 798, 814 (Mo. banc 1994)). Further, a prosecutor may draw any inferences from the evidence that he or she believes in good faith are justified. *Id.* In *Henke,* the defendant was convicted of first degree assault and armed criminal action after the defendant shot the victim with a shotgun. The defense contended that the gun had gone off accidentally. Two witnesses testified that as the defendant lowered the shotgun pointed at the victim, his finger pulled the trigger. During closing argument, the prosecutor demonstrated how defendant was holding the shotgun when it fired. In his Rule 29.15 motion, the defendant asserted that counsel was ineffective for failing to object to the demonstration because it was unsupported by the evidence. The court held that a prosecutor is allowed to argue the evidence and all reasonable inferences during closing argument and that there was sufficient evidence to support the prosecutor's inference that the defendant deliberately pointed the gun at the victim. *Id.* The court concluded that the argument and the demonstration were permissible inferences; therefore, any objection would have lacked merit. *Id.*

In Brown's case, the demonstration was a reasonable inference supported by the evidence, and the State's use of the gun during its closing argument was not more prejudicial than probative. In considering its ruling, the trial court referenced the fact that if the shooting was truly in self defense, Brown could have remained at the scene and ensured that the gun (if there really was one) possessed by victim was available for use at trial.

First, unlike the situation in *State v. Wynne,* 353 Mo. 276, 182 S.W.2d 294 (1994), cited by the principal opinion, the State's demonstration with the gun was material to challenge the credibility of Brown's self-defense evidence. *See Henke,* 901 S.W.2d at 924. Second, the

State did not seek to portray, either implicitly or explicitly, that the gun used during its demonstration was the same or similar to the gun used by Brown or the victim; it even reminded the jury that Brown had described the victim's gun as having a "white pearl grip." [4] Third, the gun was not admitted into evidence, and when the jury requested that it be able to see the gun during deliberation, it referred to the gun as a "sample." Fourth, the trial court reminded the jury that the gun had not been admitted into evidence in its response to the jury's request to see the gun. Fifth, there was evidence about where the victim supposedly carried the gun, in that Brown's witnesses inconsistently demonstrated how the victim had been carrying the gun. Finally, there was overwhelming evidence to support Brown's conviction in this case.

## Conclusion

Applying the proper standards of review to this case, which include: (1) considering the evidence in the light most favorable to the jury's verdict, (2) recognizing the trial court was in a superior position to determine the probative value versus the prejudicial effect of the demonstration that was undisputedly supported by the evidence, (3) presuming the jury followed the instructions of the trial court, and (4) that reversing a judgment based on a trial court's ruling in the closing argument requires a reasonable probability that the verdict would have been different, this Court should affirm the judgment.

4. The principal opinion misinterprets the State's purpose in making this statement. The State is not making "[t]his vague, cosmetic description ... to establish the size and shape of the gun" as explained by the principal opinion. Op. at 16. Instead, the State's purpose, which was understood by the jury, is to show that the gun it is using as part of its demonstration during closing argument is not the same gun that was allegedly carried by the victim and instead is merely a sample gun.