

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD82293** |
| | ) | |
| v. | ) | **OPINION FILED: January 28, 2020** |
| | ) | |
| **RAY A. JOHNSON,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Patrick W. Campbell, Judge

Before Division Two:  Cynthia L. Martin, Presiding Judge, Thomas H. Newton, Judge
and Gary D. Witt, Judge

Ray A. Johnson ("Johnson") appeals his convictions of first-degree murder and armed criminal action following a jury trial.  Johnson claims the State made an improper acquittal-first argument during closing that requires reversal of his convictions and a new trial.  Finding no reversible error, we affirm.

## Factual and Procedural Background

Johnson does not challenge the sufficiency of the evidence to support his convictions of first-degree murder and armed criminal action.  Viewed in the light most

favorable to the verdict, the evidence established that two witnesses driving in a vehicle near Bob's bar observed a man later identified as Johnson shoot a male victim during a physical altercation outside of the bar. The witnesses then observed Johnson standing over the victim and shooting him four or five more times. Johnson fled the scene after the shooting.

Surveillance video showed Johnson and the victim getting into the physical altercation, and showed the two witnesses driving by in a vehicle. Other evidence established that Johnson and another man, William Brown ("Brown"), spoke with the victim inside the bar; that Brown and the victim then exited the bar together; and that Johnson and another one his friends hurried out of the bar behind Brown and the victim. It was at this point that Johnson instigated an altercation with the victim.

Shell casings found at the scene were determined to have been fired from the same gun. Parts of broken eyeglasses found in two locations near the scene were genetically matched to Johnson, and video surveillance showed Johnson wearing the located eyeglasses just prior to the shooting. When Johnson was detained four days after the shooting, he was wearing new eyeglasses that still had the fashion designer sticker attached.

The victim's girlfriend identified Johnson from the bar's interior surveillance system based on the clothing he was reported to have been wearing at the time he shot the victim. She also identified Johnson as someone the victim might have been having trouble with.

An autopsy established that the victim died of multiple gunshot wounds, and that at least one of the gunshots was fired from within three feet. The victim's gunshot wounds were on the back side of his left shoulder, clustered on the right side of the abdomen, on

2

his hand, and on his buttocks. Bullets traveled through the large blood vessels in the victim's right leg, and through the victim's lung and kidney.

Johnson acknowledged that he was involved in an altercation with the victim just before the shooting, and that his eyeglasses were broken during the altercation. Johnson denied, however, that he had a gun or that he was the shooter. Johnson claimed another unidentified individual shot the victim. Johnson's trial counsel aggressively challenged at trial all of the evidence and testimony that tended to identify Johnson as the shooter, and argued that the police had rushed to judgment.

At trial, the jury was instructed on first-degree murder, and the lesser-included offenses of second-degree murder, voluntary manslaughter, and involuntary manslaughter. During closing argument, the State discussed the essential elements of murder in the first degree and addressed the evidence supporting those elements, including the element of deliberation. The State then summarized its argument, and addressed the lesser-included offense instructions as follows:

> So we know the victim was shot by the defendant. We know that he dies as a result of that. We know that the defendant knew that his conduct was practically certain to cause the death of him, of the victim. And we know that he acted with deliberation.
>
> That's it. That's murder in the first degree. That's all you have to find to find him guilty of murder in the first degree. The State has proven beyond a reasonable doubt that that is exactly what happened and you should return a verdict of guilty on that charge.
>
> Now, you're going to notice there are these things we call lesser included offenses for Count I. These are not separate charges. We have charged the defendant with murder in the first degree. ***So you are only going to get to these if you find he is not guilty of murder first degree***.

3

So the way this works is, you find him guilty of murder in the first degree, which I anticipate you will for the reasons we've already discussed. You don't look at these and you move on to Count II [the armed criminal action verdict director]. You don't have to even look at these instructions if you've done that.

[Discussion of the difference between the essential elements of murder in the first degree and second-degree murder, and why the evidence would not support the essential elements of the remaining lesser included offenses.]

You aren't even going to get to these if you find him guilty of murder in the first degree. You don't have to go through this analysis. If you find him guilty of murder in the first degree, again, as I anticipate you will because of the reasons we've discussed, and you move on to Count II.

(Emphasis added.) Johnson did not object, though he now complains on appeal that the emphasized portion of the State's closing was an improper acquittal-first argument.

Johnson's closing argument was devoted exclusively to the theory that Johnson had been misidentified as the shooter. The jury instructions were not discussed. Nor did defense counsel suggest that any of the lesser-included offense instructions were more appropriately supported by the evidence than the instruction for first-degree murder.

The jury convicted Johnson of first-degree murder and armed criminal action. Johnson filed this timely appeal.

**Analysis**

Johnson raises two points on appeal. First, he alleges that *the trial court* committed plain error when it failed to *sua sponte* intervene and issue a corrective instruction to the jury because the State's argument that the jury had to find Johnson not guilty of first-degree murder before it could consider the lesser-included offenses was an improper acquittal-first argument that resulted in manifest injustice and a miscarriage of justice requiring a new

4

trial. Second, Johnson argues that *the prosecution* plainly erred when it made an improper acquittal-first argument which resulted in manifest injustice and a miscarriage of justice requiring a new trial.

## Standard of Review

Johnson concedes that both of his points on appeal are subject only to plain error review as neither was preserved for appellate review. Plain error review "is discretionary and limited to determining whether a plain error resulted in a 'manifest injustice or miscarriage of justice[.]'" *State v. Wood*, 580 S.W.3d 566, 578 (Mo. banc 2019) (citing Rule 30.20). "The threshold issue in plain error review is whether the [trial] court's error was facially 'evident, obvious, and clear.'" *Id*. at 579 (quoting *State v. Jones*, 427 S.W.3d 191, 195 (Mo. banc 2014)). "If the appellant establishes a facially 'evident, obvious, and clear' error, then this Court will consider whether the error resulted in a manifest injustice or miscarriage of justice." *Id*. (quoting *Jones*, 427 S.W.3d at 195). "To obtain a new trial on direct appeal based on a claim of plain error, the appellant must show 'the error was outcome determinative.'" *Id*. (quoting *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006)).

## Point One

In his first point on appeal, Johnson argues that the trial court plainly erred when it failed to *sua sponte* intervene and give a curative instruction when the State argued during closing that the jury could consider the lesser-included offense instructions "only . . . if you find [Johnson] is not guilty of murder first degree." Johnson argues this was an improper

5

acquittal-first argument, and that the trial court had a duty to intervene to correct the misstatement of the law.

"Missouri's instructions on lesser-included offenses do not require that the defendant first be acquitted of the greater offense before the jury can consider the lesser offense." *Tisius v. State*, 183 S.W.3d 207, 217 (Mo. banc 2006) (citing *State v. Wise*, 879 S.W.2d 494, 517 (Mo. banc 1994)). "Instead, MAI-CR3d 313.04 provides that juries are allowed to consider the lesser-included offense if they 'do not find the defendant guilty' of the greater offense." *Id*. "Therefore, an acquittal first argument is a misstatement of the law and can constitute reversible error." *Id*.

The State argues that the challenged statement made during closing is not an acquittal-first argument. The State contends that telling a jury they must find a defendant "not guilty" of a greater offense before reaching lesser-included offense instructions is not a direction that the jury must acquit of the greater offense. The State therefore contends that telling a jury they must find a defendant "not guilty" of a greater offense is indistinguishable from telling a jury they can only consider lesser-included offense instructions if they "do not find the defendant guilty," as Johnson's jury was instructed. We disagree.

In every criminal case, MAI-CR4th 402.05 *must* be read to the jury. *See* MAI-CR4th 402.05, Notes on Use; *see also State v. Goucher*, 111 S.W.3d 915, 916-17 (Mo. App. S.D. 2003) (finding reversible error when MAI-CR3d 302.05, the predecessor to MAI-CR4th 402.05, was not read to the jury). MAI-CR4th 402.05 was read to the jury in this case. MAI-CR4th 402.05 provides, in pertinent part, that the jury's "verdict, *whether*

6

*guilty or not guilty*, must be agreed to by each juror." (Emphasis added.) A finding of "not guilty" thus requires a jury to unanimously acquit a defendant of a charged offense. As a result, the State's argument that the jury had to find Johnson "not guilty" of first-degree murder before they could reach the lesser-included offense instructions was an improper acquittal-first argument.

Though the State's argument was improper, that does not necessitate a conclusion that the trial court plainly erred by failing to *sua sponte* intervene to issue a curative instruction. This court "rarely finds plain error in closing argument, and reversal is warranted only if the defendant shows the improper argument 'had a decisive effect on the jury's determination.'" *Wood*, 580 S.W.3d at 579 (quoting *State v. McFadden*, 369 S.W.3d 727, 747 (Mo. banc 2012)). That is because the "absence of an objection and request for relief during closing arguments mean that any intervention by the trial court would have been uninvited and may have caused increased error." *State v. Perry*, 275 S.W.3d 237, 245 (Mo. banc 2009) (citing *State v. Silvey*, 894 S.W.2d 662, 670 (Mo. banc 1995)). "Indeed, the failure of defense counsel to object to improper argument is often strategic in nature, and the taking of uninvited action by the court in such a case simply may emphasize the matter in a way defendant chose not to do." *Id.* (citing *State v. Cole*, 71 S.W.3d 163, 171 (Mo. banc 2002)).

Johnson's defense strategy was misidentification. Johnson argued he was not the shooter. As such, Johnson's trial counsel devoted no attention to the verdict directing instructions during closing argument, and correspondingly, did not direct the jury's attention to lesser-included instructions in the alternative to the first-degree murder

7

instructions. The trial court did not evidently, obviously, or clearly error by failing to take the uninvited action of issuing a curative instruction after the State's improper acquittal-first argument, particularly in light of Johnson's trial strategy which did not focus on the degree of Johnson's criminal culpability, and instead focused on whether Johnson had been misidentified as the shooter. It is also significant that, after making the improper acquittal-first argument, the State told the jury -- no less than three separate times -- that, if "you find him guilty of murder in the first degree, . . . [y]our don't look at these" lesser included offense instruction. These repeated statements (that a conviction of first-degree murder made it unnecessary to consider the lesser offenses) were entirely accurate and proper, and were the primary point the prosecution sought to make with respect to the lesser offenses.

Johnson disagrees and cites *State v. Holmsley* for the proposition that "'[m]isstatements of the law are impermissible during closing arguments, and the trial judge has a duty to restrain such arguments.'" 554 S.W.3d 406, 410 (Mo. banc 2018) (quoting *State v. Anderson*, 306 S.W.3d 529, 543 (Mo. banc 2010)). Johnson thus argues that our reluctance to find plain error when a trial court fails to intervene during closing in an uninvited manner must yield to the trial court's duty to restrain misstatements of the law during closing.

Johnson's argument fails to recognize that neither *Holmsley* nor *Anderson* were plain error cases, as both involved timely objections by trial counsel to purportedly improper statements of the law by the State during closing. *Holmsley*, 554 S.W.3d at 411 (noting the "trial court acknowledged the argument was improper and sustained [the defendant's objection]"); *Anderson*, 306 S.W.3d at 543 (noting that trial counsel objected

8

to the State's argument as a purported misstatement of the law). We review a trial court's response to a timely objection during closing argument for abuse of discretion. *Holmsley*, 554 S.W.3d at 410 citing *State v. Deck*, 303 S.W.3d 527, 540 (Mo. banc 2010) (holding that preserved claim of trial court error during closing argument is reviewed for an abuse of discretion)). Plain error review is a higher standard of review than review for an abuse of discretion. *State v. Walter*, 479 S.W.3d 118, 123 (Mo. banc 2016) (noting that plain error review is a lower standard of review than review for an abuse of discretion). *Holmsley* and *Anderson* do not modify the standard of plain error review as it is applied to unpreserved claims of trial court error involving misstatements of the law during closing argument.

Even if the trial court's failure to *sua sponte* intervene in this case was facially evident, obvious and clear error (which we do not find), to obtain a new trial on direct appeal based on a claim of facially evident, obvious and clear error, Johnson must show that the trial court's failure to *sua sponte* issue a curative instruction resulted in a manifest injustice or miscarriage of justice because it was "outcome determinative." *Wood*, 580 S.W.3d at 579.

The State relies on *Tisuis* to argue that any error associated with its acquittal-first argument was not outcome determinative because the jury was properly instructed and the jury can be assumed to follow the law. In *Tisuis*, the State argued during closing in a first-degree murder case that "[y]ou look at murder second if and only if you do not believe that we proved [the essential elements of first-degree murder] beyond a reasonable doubt." 183 S.W.3d at 216. Trial counsel did not object. *Id*. The Supreme Court rejected Tisius's claim

9

of ineffective assistance of counsel. *Id*. at 217. The Court did not determine whether the State's argument was an improper acquittal-first argument, and instead held that because "[t]he jury was properly instructed on lesser-included offenses with an instruction tracking MAI-CR3d 313.04," and because "[t]he jury is presumed to have followed the trial court's instructions," there was no prejudice to the defendant. *Id*.

Here, it is uncontested that the jury was properly instructed, with an instruction that tracked MAI-CR3d 313.04, that it could not reach the lesser-included instructions unless "they do not find [Johnson] guilty of the greater offense." However, the jury was also instructed by MAI-CR4th 402.05 that to find Johnson "not guilty," they had to do so by unanimous verdict. The State's improper acquittal-first argument, which suggested the jury could not consider the lesser-included offense instructions unless it found Johnson not guilty of first-degree murder, cannot be summarily disregarded as outcome determinative on the basis that the jury can be presumed to have followed the law as instructed.

However, *Tisius* also held that even if the argument made by the State in that case "were considered an 'acquittal first' argument,[1] the strength of the evidence of deliberation precludes a finding of prejudice." *Id*. In an effort to distinguish *Tisius*, Johnson attempts to dispel the strength of the evidence of his deliberation.

---

[1]Though *Tisius* did not determine whether the State's argument was an acquittal-first argument, we question whether it was. The State's argument in *Tisius* that the jury could reach the lesser-included offense instructions "only if you do not believe that we proved [the elements of first-degree murder] beyond a reasonable doubt" appears to be the functional equivalent of the guidance provided by approved criminal instructions that a jury is allowed to consider lesser-included offense instructions if they "do not find the defendant guilty" of the greater offense. In contrast, the State's argument in this case was plainly an acquittal-first argument for the reasons we have explained.

10

"Deliberation" is "cool reflection for any length of time no matter how brief." Section 565.002(3).[2] Johnson acknowledges that the following evidence was consistent with establishing deliberation: (i) Johnson's delivery of four to five additional shots while standing over the victim after their physical altercation had ended; (ii) the fact that multiple gunshot wounds were inflicted; (iii) the fact that Johnson fled from the scene and failed to seek medical help for the victim; (iv) the fact that at least one of the gunshot wounds was the result of a shot fired within two to three feet of the victim; and (v) the fact that the gun used to shoot the victim was concealed or destroyed. Johnson argues that even though this evidence was sufficient to establish deliberation beyond a reasonable doubt, it was not "strong" when understood in the context of the distinction between first-degree and second-degree murder. *See State v. O'Brien*, 857 S.W.2d 212, 218 (Mo. banc 1993) (holding that "[b]oth second degree and first degree murder require that the act be intentionally done," but the offenses are distinguished by the requirement of deliberation for first-degree murder).

That, however, is not the lens applied in *Tisius*, where the Court did not engage in a comparative analysis of the evidence in the context of first-degree and second-degree murder, and instead summarily stated that the evidence of deliberation was strong, precluding a finding of prejudice. *Tisius*, 183 S.W.3d at 217. Earlier in the opinion, the Court recounted the "substantial" and "overwhelming" evidence of deliberation. *Id*. at 213. That evidence included that Tisius possessed a gun; spoke for a period with officers before

---

[2]All statutory references are to RSMo 2016 as supplemented through April 23, 2016, the date of Johnson's charged conduct, unless otherwise noted. Effective August 28, 2017, the definition of "deliberation" now appears at section 565.002(5).

11

using the gun to shoot one of the officers as part of an escape attempt; and shot an already wounded officer a second time while the officer was lying on the ground. Here, Johnson possessed a gun; had a conversation with the victim inside the bar; watched the victim leave the bar, then hurriedly followed the victim out of the bar with the intent to confront the victim; instigated a physical altercation with the victim before shooting him; delivered four to five additional shots into the victim while standing over the already wounded victim; fled the scene; and thereafter concealed or destroyed the gun used to shoot the victim. This evidence of deliberation is as strong as, if not stronger than, the evidence of deliberation in *Tisius*.

"'The entire record is considered when interpreting a closing argument, not an isolated segment.'" *Wood*, 580 S.W.3d at 579 (quoting *McFadden*, 369 S.W.3d at 747). Though the State's argument during closing was an improper acquittal-first argument, "[t]he state's isolated reference [ ] did not change the outcome of this case." *Wood*, 580 S.W.3d at 580. Johnson has not shown "a manifest injustice justifying the rare step of finding plain error based on statements made in closing argument." *Id*. (citing *State v. Anderson*, 79 S.W.3d 420, 439 (Mo. banc 2002) (holding that "[s]tatements made in closing argument will only rarely amount to plain error")).

The trial court did not plainly err when it failed to *sua sponte* intervene to provide a curative instruction during the State's closing argument. Point One is denied.

## Point Two

In his second point on appeal, Johnson argues that the *prosecution* plainly erred when it made an improper acquittal-first argument which resulted in manifest injustice and a miscarriage of justice, entitling him to a new trial.

Before addressing the merits of this point, we must first determine its cognizability on direct appeal. The State argues that claims on appeal must identify *trial court* error as required by Rule 84.04(d), which addresses the form of points relied on. The State thus argues that because Johnson's point on appeal seeks plain error review of the prosecutor's conduct and does not allege trial court error, the claim is not cognizable on direct appeal.

Johnson argues that freestanding claims of prosecutorial misconduct must be cognizable on direct appeal. He relies on *Tisius*, which held that "[a] freestanding claim of prosecutorial misconduct is generally not cognizable in a Rule 29.15 proceeding," because "[i]f the alleged misconduct was apparent at trial, then it is an issue for direct appeal, not a Rule 29.15 proceeding." 183 S.W.3d at 212. After stating this general principle, *Tisius* held that "a claim involving improper argument was apparent at trial and could have been raised on direct appeal." *Id.*

We agree with Johnson that claims of prosecutorial misconduct arising out of conduct which was apparent at trial are cognizable, and in fact must be raised, if at all, on direct appeal. *Id.* Because Johnson's claim of prosecutorial misconduct involves improper closing argument which was apparent at trial, the claim of prosecutorial misconduct had to be raised, if at all, on direct appeal. *Id.*

13

We do not agree, however, that claims of prosecutorial misconduct that are cognizable on direct appeal are "freestanding" claims, a label which suggests the claims are subject to review (plain or otherwise) independent of alleged trial court error. Certainly, *preserved* claims of prosecutorial misconduct apparent at trial are readily framed in terms of trial court error as required by Rule 84.04(d) based on the trial court's denial of a defendant's timely objection, request for curative relief (*i.e.* a curative instruction or a mistrial), or motion for new trial. Similarly, where a claim of prosecutorial misconduct is not preserved at trial, the claim can still be raised in a point relied that complies with Rule 84.04(d) by alleging trial court error in failing to *sua sponte* intervene to address the prosecutorial misconduct that was apparent at trial. This observation is aptly demonstrated by Johnson's first point on appeal.

We therefore conclude that although claims of prosecutorial misconduct apparent at trial are cognizable on direct appeal, they are not "freestanding," and must be framed in terms of trial court error as required by Rule 84.04(d). *See, e.g., State v. Forrest*, 183 S.W.3d 218, 226-27 (Mo. banc 2006) (reviewing a claim of trial court error based on a prosecutor's improper closing arguments alleged to rise to the level of prosecutorial misconduct); *State v. Zink*, 181 S.W.3d 66, 71 (Mo. banc 2005) (reviewing claim of trial court error in sustaining State's objection to admission of report that had not been timely disclosed to the defendant, raised in the context of a claim of prosecutorial misconduct); *State v. Clay*, 975 S.W.2d 121, 134 (Mo. banc 1998) (refusing to review two claims of prosecutorial misconduct where both claims were not preserved for appellate review because neither claim was raised with the trial court by objection at trial or in motion for

14

new trial); *State v. Roberts*, 948 S.W.2d 577, (Mo. banc 1997) (reviewing a claim of trial court error in denying a motion for mistrial that alleged prosecutorial misconduct in commenting about evidence that had been suppressed); *State v. Doss*, 659 S.W.2d 273, 273-74 (Mo. App. E.D. 1983) (reviewing trial court's denial of a motion for new trial which raised an issue of prosecutorial misconduct); *State v. Peterson*, 833 S.W.2d 395, 396 (Mo. App. S.D. 1992) (reviewing a claim of trial court error in denying a motion for new trial based on a prosecutor's alleged misconduct). As a result, Johnson's second point on appeal, which purports to assert a ***freestanding*** claim of prosecutorial misconduct untethered to a claim of trial court error, has no merit because our review on appeal is limited to trial court error.[3]  *See* section 512.160.2 ("No appellate court shall reverse any judgment, unless it believes that error was committed by the trial court against the appellant, and materially affecting the merits of the action.")

The propriety of this conclusion is underscored by Johnson's unsupported contention in his second point on appeal that a "freestanding" claim of prosecutorial misconduct authorizes a court to award a new trial even in the absence of trial court error.

---

[3]We recognize that our Supreme Court has used the phrase "freestanding claims of prosecutorial misconduct" on two occasions in *McIntosh v. State*, 413 S.W.3d 320, 331 (Mo. banc 2013) and *Tisius*, 183 S.W.3d at 212. But in both cases, the court referred to the prosecutorial misconduct claim as "freestanding" because it was raised in a Rule 29.15 motion divorced from a claim of ineffective assistance of counsel. In rejecting the ability to raise "freestanding claims of prosecutorial misconduct" in Rule 29.15 motions when the alleged improper conduct was apparent at trial, our Supreme Court effectively held that such claims are no more than claims of trial court error, and that "[c]laims of trial error will only be considered in a Rule 29.15 motion where fundamental fairness requires, and then, only in rare and exceptional circumstances." *McIntosh*, 413 S.W.3d at 331; *Tisius*, 183 S.W.3d at 212. Though *McIntosh* and *Tisius* support the conclusion that claims of prosecutorial misconduct apparent at trial can, and in fact must, be raised on direct appeal, neither case can be read for the proposition that prosecutorial misconduct claims cognizable on direct appeal are "freestanding" claims that can be reviewed independent of a claim of trial court error.

In contrast, claims of prosecutorial misconduct that are appropriately raised in post-conviction proceedings because they were not apparent at trial (for example, *Brady* violations), are, by their very nature, "freestanding" claims of constitutional error because they could not have been raised at trial, and because they cannot be attributed to ineffective assistance of counsel.

15

Johnson argues that he is entitled to a new trial because we should send a message to prosecutors who, (according to Johnson), persist in making improper acquittal-first arguments. However, "[t]he touchstone of due process in cases involving prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Roberts*, 948 S.W.2d at 605 (citing *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). "The court seeks to ensure that the defendant receives a fair trial, not to punish society at large for the prosecutor's misconduct." *Id.* (citing *Smith*, 455 U.S. at 219).

In *Smith*, the United States Supreme Court reviewed a claim of prosecutorial misconduct involving a *Brady*[4] violation. 455 U.S. at 218-21. Though *Smith* involved an application for federal habeas relief, and not a direct appeal, its guidance on the subject of affording relief for prosecutorial misconduct is nonetheless instructive. In *Smith*, an intermediate court of appeals concluded "that the prosecutor's failure to disclose [a juror's job] application, without more, violated respondent's right to due process of law." *Id.* at 218. In rejecting the contention that "the appearance of justice" is sufficient without a finding of trial prejudice to justify awarding a new trial, the United States Supreme Court noted that the focus cannot be on the prosecutor's misconduct, but must instead be on the effect of the misconduct on the trial. *Id.* at 219-20.

> Nor do we believe the constitutional obligation [to disclose unrequested information] is measured by the moral culpability, or willfulness, of the prosecutor. . . . If the suppression of [] evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor.

---

[4]*Brady v. Maryland*, 373 U.S. 83 (1963).

*Id*. at 220 (quoting *United States v. Agurs*, 427 U.S. 97, 110 (1976)).

Similarly, where a claim of prosecutorial misconduct is apparent at trial, and is therefore cognizable on direct appeal, we concern ourselves with the impact of the alleged misconduct on the fairness of the defendant's trial, and not on punishing the prosecutor. In *State v. Forrest*, 183 S.W.3d 218, 226-27 (Mo. banc 2006), a defendant claimed **trial court error** on direct appeal based on the prosecutor's improper closing arguments which were alleged to rise to the level of prosecutorial misconduct. Our Supreme Court held:

> In situations involving prosecutorial misconduct, the test is the fairness of the trial, not the culpability of the prosecutor. "Where prosecutorial misconduct is alleged, the erroneous action must rise to the level of 'substantial prejudice' in order to justify reversal." "The test for 'substantial prejudice' is whether the misconduct substantially swayed the judgment."

*Id*. (quoting *State v. Peterson*, 833 S.W.2d 395, 398 (Mo. App. S.D. 1992)). In *Forrest*, the defendant's claim of prejudice was rejected as there was "nothing other than speculation [provided by the defendant] that exclusion of [the improper argument] would have changed the outcome of his trial." *Id*. at 228.

We reach the same conclusion here. "We do not condone the conduct of the prosecutor[] in this case."[5] *Smith*, 455 U.S. at 220. But, as we concluded in connection

---

[5]We cannot emphasize enough that prosecutors must avoid using terms or phrases that plainly fall into the category of acquittal-first arguments. Telling a jury they must first find a defendant not guilty of a greater offense before lesser-included offense instructions can be reached is plainly an improper acquittal-first argument. There is virtually no explanation that will excuse such an argument from being made by a prosecutor in the future. "[T]he responsibility of a public prosecutor differs from that of the usual advocate." *In re Schuessler*, 578 S.W.3d 762, 773 (Mo. banc 2019) (quoting *State v. Herrington*, 534 S.W.2d 44, 50 (Mo. banc 1976)). "A prosecutor 'is not an advocate in the ordinary sense of the word, but is the people's representative, and [the prosecutor's] primary duty is not to convict but to see that justice is done.'" *Id*. (quoting *Herrington*, 534 S.W.2d at 49). "A 'prosecutor is under a duty to consider the public interest in the fair administration of criminal justice.'" *Id*. (quoting *State ex rel. Norwood v. Drumm*, 691 S.W.2d 238, 241 (Mo. banc 1985)). The failure to abide by this duty may well expose a prosecutor to discipline for professional misconduct. *See, e.g., id*.; *State v. Sherman*, 305 Kan. 88, 114-15 (2016) ("A prosecutor who knowingly and intentionally disregards the dictates of justice in Kansas courts does so at his or her peril," subjecting the prosecutor to "the traditional remedy of a disciplinary referral," or to an order on the trial

with our discussion of Johnson's first point on appeal, (the only point that was properly framed in terms of trial court error), the State's improper acquittal-first argument did not change the outcome of Johnson's trial. This conclusion is not altered merely because Johnson's second point on appeal is improperly framed as a freestanding claim of prosecutorial misconduct untethered to a claim of trial court error.

Point Two is denied.

## Conclusion

The trial court's judgment is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge


All concur

---

court's own motion directing an offending prosecutor to "show cause why the prosecutor should not be found in contempt of court for his or her misconduct"); *In re Howes*, 52 A.3d 1 (D.C. Ct. App. 2012) (holding that prosecutor was subject to disbarment for flagrant violation of ethical duties).